## The Putney School, Inc. v. Joseph Schaaf

[599 A.2d 322]

No. 89-253

Present: **Gibson, Dooley and Morse, JJ., and Barney, C.J. (Ret.) and Martin, Supr. J., Specially Assigned**

Opinion Filed June 14, 1991

Motion for Reargument Denied October 4, 1991

*John H. Fitzhugh* of *Sheehey Brue Gray & Furlong*, Burlington, for Plaintiff-Appellant.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee CNA Insurance Companies.

*Jeffry W. White* of *Theriault & Joslin, P.C.*, Montpelier, for Defendant-Appellee National Union Fire Insurance Company.

**Morse, J.** We are asked to decide whether insurance policies underwritten by CNA Insurance Companies and National Union Fire Insurance Company provided coverage to Putney School for the wrongful discharge of a music teacher, Joseph Schaaf. After trial, the superior court ruled that CNA was properly notified of the teacher's claim, but in a later proceeding held that its policy did not cover Putney School for breach of contract. The court also ruled that National Union's policy excluded the Schaaf claim because National Union was not given notice of it according to a provision requiring notice of preexisting potential claims. Putney School, bereft of any insurance coverage, appealed. We affirm in part and reverse in part.

The essential facts are not in dispute, but they and the procedural posture of this lawsuit are complicated. In January 1984, the Putney School's headmaster (called school director) became dissatisfied with Schaaf and informed him that his employment would be terminated at the end of that school year. Schaaf was advised of his appeal rights. The school director also told Schaaf that he could take up the matter of his employment with the new school director when she took over. In mid-1984, Schaaf hired an attorney, and, on June 5, 1984, filed an appeal to the school's administrative council. That month the school also hired an attorney to represent its interests in the matter. The appeal was never heard, and Putney gave Schaaf a sabbatical for the 1984–1985 school year.

In January 1985, Putney's new school director upheld the decision to discharge Schaaf and advised him of his right to appeal. A second appeal was filed but apparently never heard. Protracted negotiations ensued, aimed at settling the employment dispute but instead culminating in a lawsuit for declaratory judgment brought by the school on May 27, 1986. Schaaf counterclaimed for wrongful discharge. Later, the school brought its two insurers, CNA and National Union, into the suit as third-party defendants to determine their respective responsibilities, if any, to cover Schaaf's claim.

CNA covered Putney School with a "claims made" liability policy for a three-year period ending May 25, 1985. The CNA policy extended coverage for wrongful acts occurring within the policy period so long as written notice was given the insurer within one year of notice to the school of the claim. CNA's policy, however, excluded "any amounts due, under the terms of any contractual obligation."

When CNA's policy terminated, National Union's coverage of the school commenced. Its policy covered a three-year period beginning May 25, 1985. A prior acts endorsement in the policy provided:

> In consideration of the premium charged, it is hereby understood and agreed that this policy is extended to cover Wrongful Acts committed prior to the beginning of the Policy Period.

> All references in this policy to Wrongful Acts committed during the Policy Period are hereby amended to include Wrongful Acts committed prior to the beginning of the Policy Period.

> It is further understood and agreed that the following *exclusion* is hereby added to this policy.

> (K) *To Wrongful Acts committed prior to the beginning of the Policy Period if, on or before 5/25/85 any Insured knew or could have foreseen that such Wrongful Acts would result in a claim or suit against the Insured.*

(Emphasis added.)

Written notice of the Schaaf claim was sent June 10, 1986, to Putney's insurance broker, Brewer & Lord, which in turn notified National Union, but not CNA. Ten months later, after re-

peated attempts by Putney to prompt National Union to take action, it learned the carrier might decline coverage. National Union sent a letter dated June 24, 1987, declining coverage on the basis of the wrongful acts exclusion. Thereupon, Putney notified CNA of the Schaaf claim, but CNA promptly denied coverage due to late notice.

CNA answered the school's third-party complaint by raising only the affirmative defense of untimely notice. On April 28, 1988, the trial court ordered that by August 1, 1988, the parties were to file a statement of "significant issues of fact and law." On May 31, 1988, motions for summary judgment were filed by the carriers. CNA's motion rested solely on the ground that the Schaaf claim was not within the policy period and, if it was, that proper notice was not received. Putney then filed a cross-motion for summary judgment refuting the defenses raised by the companies and asserting that National Union was estopped from denying coverage because it neglected to respond promptly. Because the trial court concluded that the motions for summary judgment raised disputes concerning genuine issues of material fact, it denied them and ordered a trial.

Trial on the merits of the third-party action was held on August 8, 1988. At the close of evidence, the court ruled from the bench that National Union had properly declined coverage because its policy's prior wrongful act exclusion applied but that CNA had been properly notified and "there was coverage under the CNA policy for Putney for the circumstances surrounding the termination of Mr. Schaaf." On August 12, 1988, the court ordered:

> 1. CNA Insurance Companies (CNA) shall provide insurance coverage in accordance with its Insurance Policy with the Putney School which is in evidence.
>
> 2. National Union need not provide insurance coverage in accordance with its Insurance policy with the Putney School which is in evidence.

The Schaaf claim then proceeded to trial and, after a few days of evidence, was settled. A stipulation was signed, and it became an order of the court dated August 17, 1988, which included the following provision: "This order plus the August 12, 1988 Coverage Order fully dispose of all claims herein."

Thereafter, CNA filed a motion under V.R.C.P. 54(b) and 59(e) to amend the August 17th judgment, raising for the first time the defense that its policy excluded coverage for breach of contractual obligation. The court, without stating why, re-opened the third-party dispute and, on April 12, 1989, granted CNA summary judgment.

Putney appealed from the court's amended judgment. CNA challenges the original judgment on its obligation to provide coverage. Although CNA did not cross-appeal, the issue is pre-served. See *Staruski v. Continental Telephone Co.*, 154 Vt. 568, 571 n.3, 581 A.2d 266, 267–68 n.3 (1990).

## I.

CNA argues that the court was wrong in finding that its pol-icy's notice-of-claim requirement was satisfied. The policy pro-vided that (1) the insured must report a claim in writing to the insurer, paragraph VII(c); (2) notice to the insurer shall be given to the firm shown in Item G of the declarations, para-graph VII(e); (3) CNA, CNA Plaza, Chicago, Illinois, is the firm indicated in Item G of the declarations; and (4) "[n]otice to any agent of knowledge possessed by any agent or by any other person shall not . . . estop the Insurer from asserting any right under the terms of this policy," paragraph VIII(g). CNA as-serts that because Putney School only notified its insurance broker, Brewer & Lord, CNA is not estopped from asserting improper notice.

Anticipating that the dispute over Schaaf's termination might warrant notice to its insurer, Putney's business manager in June 1984 telephoned Brewer & Lord, the brokerage firm that arranged for the policy with CNA and to which Putney made premium payments. Brewer & Lord was told that Schaaf had been terminated and that a dispute existed. Because Brewer & Lord did not think the incident serious enough, it did not pass on the information to CNA. On these facts, the trial court concluded that Brewer & Lord was acting as an agent on CNA's behalf and that notice to it was notice to CNA.

Two years later, on June 10, 1986, Putney's lawyer sent Brewer & Lord a letter explaining that settlement had failed and a lawsuit was about to be brought. Brewer & Lord for-warded the information to National Union, but not to CNA.

CNA's first notice of the Schaaf dispute was a letter from Putney in June 1987.

### A.

CNA submits that the court's agency finding was clearly erroneous. V.R.C.P. 52(a)(2). In finding that Brewer & Lord acted as CNA's agent, the court properly looked to the circumstances of their relationship and their conduct. *Rule v. New Hampshire-Vermont Health Service*, 144 Vt. 323, 326, 477 A.2d 622, 624 (1984).

The court made findings on several key areas of the relationship between CNA and Brewer & Lord: (1) although it could not bind CNA to policies, Brewer & Lord solicited business on CNA's behalf; (2) premiums were paid to Brewer & Lord, which forwarded them to CNA; (3) CNA paid Brewer & Lord a percentage of the premiums for policies Brewer & Lord sold; and (4) Brewer & Lord evaluated reports from insureds about potential claims and decided which ones were serious enough to warrant notice to CNA. Based on the totality of the relationship, but most particularly the last factor, the court found that Brewer & Lord "perform[ed] a dual function," that is, it acted as agent for both the insurer and the insured at the notice-of-claim stage.

The court's findings were based on the testimony of Roger Wilson, a partner at Brewer & Lord who handled Putney's business. Although Wilson denied that he or his firm ever acted as an agent for CNA, his testimony on Brewer & Lord's role supports each of the court's findings. On the fourth factor, the court questioned Wilson directly:

> COURT: For whom are you doing the evaluating at the incident stage?
>
> WITNESS: Well, for the insured. And we also are acting, we feel, in the best interest also of the insurance carrier, both parties.
>
> . . . .
>
> COURT: How do you know where your loyalties lie when you are doing this evaluation? . . . [F]rom what you're saying it sounds like you wear two hats. If not, can you clear that up?

WITNESS: Well, we obviously represent our clients, the insured party. But we also have an obligation to the carriers to keep them informed and protect their interest.

. . . .

COURT: Is there any industry standard that affects your operation . . . that customarily establishes which hat you are wearing under circumstances where there may be an incident or a situation or even a claim?

WITNESS: I don't believe there are any strict standards, no. We're thought of as representing the client obviously. But you can only represent the client to whatever extent you also we feel represent your carriers. There is a bond there.

■ The court's finding that Brewer & Lord acted as an agent for both parties at the notice-of-claim stage was supported by reasonable and credible evidence—and despite Wilson's protestations to the contrary—was not clearly erroneous. *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 154–55, 559 A.2d 1068, 1069 (1989) (in determining whether fact findings are clearly erroneous, evidence must be viewed in the light most favorable to the prevailing party and findings will be upheld if supported by reasonable or credible evidence, even if contrary evidence exists).

### B.

CNA next maintains that, because notice was not in accordance with the express direction that notice be sent to CNA at its Chicago address, coverage was not afforded. CNA reasons that notice requirements should be strictly enforced in a "claims made" policy because, if liberally construed, the insured receives coverage substantially broader than provided in the policy. Whatever merit there is to that argument, we fathom no such prejudice to the carrier here. Lateness of notice may affect the risk, but here notice was delivered to Brewer & Lord in a timely manner. Had Brewer & Lord done its job, notice would have reached CNA promptly.

In order for the insured to appreciate the requirement that notice must be sent to CNA in Chicago or its coverage would evaporate, it would have to read paragraph VII(e) (notice to be given to "person or firm(s) shown under Item G)," then refer to Item G (which named CNA, Chicago), and then conclude that notice to Brewer & Lord is insufficient. CNA argues that the policy warns the insured of the latter conclusion by reference to paragraph VIII(g) ("notice to any agent of knowledge . . . shall not effect a waiver").

 We conclude that this labyrinth of obscurely written clauses does not reasonably apprise the insured of this purported requirement. It should be apparent to reasonable insurers that doing business through a "middleman" with whom the insured communicates and to whom premiums are paid, creates the distinct impression that notice to the "middleman" is all that is required. The policy, fairly read, did not dispel that impression. See *Fish v. Nationwide Mutual Insurance Co.*, 126 Vt. 487, 492, 236 A.2d 648, 651 (1967) (insurance contract provisions must be interpreted as they would be understood by the ordinary reader and construed against the insurer if there is "real substantial doubt" about their meaning).

We conclude that the trial court's finding of agency was not clearly erroneous and that the policy notice requirements were met.

## C.

█ Alternatively, CNA contends that Putney violated paragraph VII(a) of the policy, which requires written notice to the insurer within one year of becoming informed of the Schaaf claim. Paragraph VII(a) provides:

> If the School District . . . shall receive written or oral notice from any party that it is the intention of such party to hold the Assureds responsible for a Wrongful Act which occurred during the policy period, they shall give written notice within one year to the Insurer of the receipt of such written or oral notice . . . .

CNA claims the June 10, 1986 letter from Putney to Brewer & Lord was too late because notice of the Schaaf dispute was first known more than a year previously. The rule in Vermont is that

substantial compliance with notice requirements will suffice. See *Stonewall Insurance Co. v. Moorby*, 130 Vt. 562, 566–67, 298 A.2d 826, 829 (1972) (insurance policy provisions are liberally construed in favor of the insured, and substantial rather than strict compliance will suffice). We do not read the policy's written notice provision to defeat coverage when the receipt of oral notice, here the telephone notice to Brewer & Lord in June 1984, is admitted.

■ As a general rule, where an insurance policy provides for written notice to the insurer, oral notification is insufficient. See 8 J. Appleman, Insurance Law and Practice § 4737 (1981). Nonetheless, policy provisions on notice must be "reasonably construed, so as to conserve the true purpose of their presence in the contract." *Id.* § 4731, at 6. It is universally recognized that the purpose of a notice provision is to give the insurer the opportunity to make a timely and adequate investigation of potential claims in order to assess its rights and liabilities. *Id.* § 4731, at 2; see 13A G. Couch, Cyclopedia of Insurance Law 2d § 49:2 (rev. ed. 1982). Thus, some courts have held that where the insurer has received timely actual notice in whatever form, it must show prejudice in order to deny coverage. *Phico Insurance Co. v. Providers Insurance Co.*, 888 F.2d 663, 668–69 (10th Cir. 1989) (Kansas law); *Fox v. National Savings Insurance Co.*, 424 P.2d 19, 25 (Okla. 1967). Other courts have gone even further, holding that, absent a showing of prejudice, the insured's failure to give any timely notice does not discharge the insurer's duty to provide coverage. *Insurance Co. of Pennsylvania v. Associated International Ins. Co.*, 922 F.2d 516, 523 (9th Cir. 1990) (California law); *Aetna Casualty & Surety Co. v. Murphy*, 206 Conn. 409, 418–19, 538 A.2d 219, 223–24 (1988) (collecting cases); *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 280–82, 409 N.E.2d 185, 187–88 (1980).

■ The purpose of the written notice requirement is to avoid a dispute over whether notice was given, and if so, when. But Brewer & Lord admitted it received timely notice. Any prejudice to CNA's ability to investigate the Schaaf matter resulted, not from the form of Putney's notice to Brewer & Lord, but from Brewer & Lord's decision, acting as CNA's agent, that the incident was not worthy of CNA's attention.

## D.

■ CNA's final argument on the issue of notice is that by statute Brewer & Lord is a broker and as such cannot be CNA's agent. Section 4792(b) of Title 8 states:

Every insurance broker . . . who solicits an application for insurance of any kind shall, in any controversy between the insured . . . and the insurer issuing any policy upon such application, be regarded as representing the insured . . . and not the insurer . . . .

This statute does not foreclose the possibility that a broker may for some purposes be acting as an agent for the insurer. 3 G. Couch, *supra*, § 25:96, at 459–60 (1984) ("statutes may declare that a broker is the agent of the insured but such statutes do not preclude the creation of an actual agency between the insurer and the broker"); see also *Maloney v. Rhode Island Ins. Co.*, 115 Cal. App. 2d 238, 245, 251 P.2d 1027, 1031 (1953) (stating that "[i]t has uniformly been held that such a provision does not prevent an actual agency relationship, different from that described in the [statute], from arising from the fact of conducting a transaction" and collecting cases from other jurisdictions to that effect).

## II.

Putney contends that CNA's belated effort to raise a defense that its policy excluded coverage for breach of contract should not have been considered by the trial court. We agree.

■ A dispute existed between CNA and Putney over coverage. The coverage issue raised in the pleadings went to trial, was argued, and decided. Coverage having been decided by the court's judgment, the underlying dispute between the school and Schaaf then went forward, and a settlement was reached. CNA gave no reason why it failed to litigate the issue earlier, apparently raising it as an afterthought once judgment was entered. The court abused its discretion by reopening the proceedings when no justification was alleged or proved.

■ CNA brought its motion to amend the court's order pursuant to V.R.C.P. 54(b). That rule provides that, where an action involves multiple claims or parties, the court may enter a

final judgment on fewer than all the claims if it determines that there is no just reason to delay doing so. If the court does not make this determination, its "order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims." The court's August 12th order, requiring CNA to "provide insurance coverage in accordance with its Insurance Policy with the Putney School" was interlocutory. Consequently, the court had the "plenary power" to revise its judgment "as justice requires" without reference to the strictures of V.R.C.P. 60(b), which apply only to final judgments. *Dudley v. Snyder*, 140 Vt. 129, 131, 436 A.2d 763, 764 (1981).

Plenary power, however, is not arbitrary power. The court's power to reopen any issue under V.R.C.P. 54(b) can be exercised only "as justice requires," that is, in accordance with the principles of equity and fair play. See *Marconi Wireless Telegraph Co. of America v. United States*, 320 U.S. 1, 47–48 (1943) (decisions to reconsider or reopen interlocutory orders are matters for the court's discretion). As with all matters within the court's discretion, the court's action is subject to an abuse-of-discretion standard of review. *In re Burlington Bagel Bakery, Inc.*, 150 Vt. 20, 22, 549 A.2d 1044, 1045 (1988).

After a settlement was reached by the school, at which point CNA was "on the risk," CNA moved the court to amend its August 12th order to provide that nothing in it would be "deemed to adjudicate or prejudice the rights of CNA." This was an odd request, given that controversy over coverage of the Schaaf claim was the sole issue at trial and given that CNA had unequivocally lost on this very issue. CNA did not assert that the court's order was ambiguous, and it did not explain why its plain meaning should not control. Nor did CNA assert that it had not had an opportunity to fully litigate its case or give any reason whatsoever why it was entitled to relief from the judgment arrived at. Rather, it simply stated that the trial court "did not adjudicate whether the coverage available under the policy is, in whole or in part, applicable to the specific claims of Joseph Schaaf in the underlying action."

The purpose of resolving the coverage issues before the Schaaf trial was to give the parties a sense of the risks to be allocated in the Schaaf litigation. As a result of the court's Au-

gust 12th order, Putney reasonably relied on CNA to cover its liability to Schaaf, subject only to any appeal of the issues litigated. The school went forward with its suit, ultimately settling with the teacher. Its willingness to do so was undoubtedly based in part on its belief that CNA would provide coverage. Prejudice to Putney is obvious; after Putney settled a lawsuit subject to the trial court's judgment that CNA was responsible for the risk, the court allowed CNA to spring a new ground to avoid the risk and thereby changed the calculus Putney used in settling the Schaaf claim. On the other hand, CNA, which had a full and fair opportunity to litigate the issue of coverage, sought a gratuitous second chance in violation of principles of finality and judicial economy. CNA did not rely on any excuse caused by human error or unavoidable circumstance. The court abused its discretion by considering CNA's request.

## III.

Putney contends that the trial court erred in finding that National Union's policy excluded coverage of the Schaaf claim. Exclusion K of the policy exempts from coverage:

> Wrongful Acts committed prior to the beginning of the Policy Period if, on or before 5/25/85 any Insured knew or could have foreseen that such Wrongful Acts would result in a claim or suit against the Insured.

Specifically, Putney disputes that there was sufficient evidence to support the court's finding that "Putney could have foreseen that the termination of Mr. Schaaf would result in a claim or suit against [it]."

The court found that in January 1984 Schaaf was terminated by Putney, and that in June 1984 he hired an attorney who communicated to the school his belief that the termination was improper under his employment contract. Also, in June 1984, Putney contacted its own counsel, who commenced settlement discussions with Schaaf's attorney.

Not only were these findings supported by the record, most were stipulated by the parties. In addition, there was evidence that, prior to May 5, 1985, Putney had contacted Brewer & Lord about the Schaaf situation, and that Putney had declined a settlement offer made by Schaaf's attorney.

The court concluded that

> in this day and age if an employee who has a contract is terminated, and that employee thereafter retains counsel who makes a communique with the insured that something is amiss, under those circumstances, and as I've outlined the broad history, the insured could have foreseen that the termination . . . would result in a claim or a suit.

Putney argues that the court placed too much emphasis on the parties' retention of counsel. It contends that the testimony of Schaaf's attorney shows he was seeking reinstatement for his client, not a lawsuit, and that the likelihood of settlement meant that the incident had not risen to the level of a claim. The presence of contrary evidence, however, does not render the court's finding clearly erroneous.

Exclusion K calls for notice, not of certain liability, but of the insured's potential liability. The provision seeks disclosure of problematic situations that, without resolution by other means, would result in a lawsuit. By May 25, 1985, almost a year and a half had passed since Schaaf's termination, and his situation had not been resolved. Schaaf had hired a lawyer and let the school know that he considered his termination to be wrongful. The school would not have hired its own attorney and entered into settlement discussions if the Schaaf situation were not one that might be the basis for a claim or suit.

Putney also argues that, because National Union delayed for more than a year in declining Putney's claim, it should be barred by equitable estoppel from raising its policy exclusion. The trial court made no findings on this issue. Because the court initially found CNA liable for coverage of the Schaaf claim, it presumably found that Putney had suffered no prejudice from National Union's delay.

*The court's August 12, 1988 order is affirmed; its April 12, 1989 order is reversed.*