GERRISH CORPORATION, doing business as Gerrish Motors, doing business as Scrub-a-Dub, Plaintiff–Appellee,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant–Appellant.

No. 1480, Docket 91–7008.

United States Court of Appeals, Second Circuit.

Argued May 22, 1991.

Decided Oct. 30, 1991.

Karen McAndrew, Burlington, Vt. (Dinse, Erdmann & Clapp, of counsel), for appellant.

Robert E. Manchester, Burlington, Vt. (Patricia S. Orr, Manchester Law Offices, Leo A. Bisson, Jr., Richard N. Bland, Downs, Rachlin & Martin, Burlington, Vt., Gerald R. Tarrant, Montpelier, Vt., of counsel), for appellee.

George A. Holoch, Jr., Miller, Cleary & Faignant, Rutland, Vt., Thomas W. Brunner, Marilyn E. Kerst, Frederick S. Ansell, John W. Scott, Wiley, Rein & Fielding, Washington, D.C., on the brief, for amicus curiae Ins. Environmental Litigation Ass'n.

William H. Allen, Saul B. Goodman, William F. Greaney, Stanlake J.T.M. Samkange, Covington & Burling, Washington, D.C., on the brief, for amici curiae The American Petroleum Institute, The American Fiber Mfrs. Ass'n, Intern. Business Machines Corp., and Olin Corp.

Before VAN GRAAFEILAND, MESKILL and McLAUGHLIN, Circuit Judges.

MESKILL, Circuit Judge:

In this diversity action we must determine whether an insurance organization authorized to act on behalf of member insurance companies can substantively alter a policy of insurance that was traditionally amended only by the insurance company and whether environmental response costs fall within the meaning of "damages" under a general liability policy.

This is an appeal from a judgment of the United States District Court for the District of Vermont, Parker, *J.*, entered on December 5, 1990. *See Gerrish Corp. v. Universal Underwriters Ins. Co.*, 754 F.Supp. 358 (D.Vt.1990). The judgment declared that appellant Universal Underwriters Insurance Company (Universal) was required to defend appellee Gerrish Corporation (Gerrish) in an environmental action threatened by the State of Vermont. The judgment also proclaimed that Universal could be responsible for the payment of cleanup costs as well as for other damages. Universal appeals claiming that the liability policy issued to Gerrish excluded coverage for Vermont's pollution claim, that Insurance Services Organization (ISO) did not

amend the Gerrish policy, that environmental response costs are not recoverable as damages under the Gerrish policy, and that Gerrish cannot succeed in this action because of the "owned property" exclusion in the policy.

We agree with the district court that the policy issued by Universal to Gerrish was amended by ISO, that the policy covers Vermont's pollution claim, that environmental response costs are damages as that term is used in the policy and that the "owned property" exclusion does not bar Gerrish's claim. We therefore affirm the judgment of the district court.

## BACKGROUND

The background of this litigation, filed under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 2201, is set forth in the opinion of Judge Parker. 754 F.Supp. 358. The facts relevant to this appeal are summarized below.

Gerrish, a Vermont corporation with its principal place of business in Woodstock, Vermont, is the owner of Woodstock East, a small shopping center in Woodstock, Vermont. Two of the businesses on the property are Gerrish Motors, an automotive dealership, and Scrub-a-Dub, a car wash and gas station, both of which are subdivisions of Gerrish.

Defendant Universal is a stock insurance company with its principal place of business in Kansas City, Missouri. Universal is licensed to engage in the business of selling insurance in the State of Vermont. On September 1, 1984 Universal issued a general liability policy, hereinafter the Unicover III policy, covering the Gerrish property. The events that led to the instant controversy are outlined below.

In November 1973 Scrub-a-Dub realized that approximately 4,785 gallons of gasoline had been lost from its underground fuel storage tanks. The tanks were tested, excavated, and a tank thought to be leaking was replaced. Gerrish made no attempt to clean up the sub-surface spilled gasoline. Gerrish subsequently leased the Woodstock East property and shopping center to Woodstock Associates but, through various lease and lease-back arrangements, Gerrish retained ownership, possession and control of the Scrub-a-Dub facilities.

On May 2, 1985 Gerrish was notified by Vermont's Agency of Environmental Conservation that petroleum pollution emanating from Woodstock East was migrating into neighboring property and into a natural drainage stream that emptied directly into the Ottauquechee River, creating a hazard to the public and the environment. Vermont advised that Gerrish could on its own take corrective measures under Agency supervision to alleviate the harm. Alternatively, if Gerrish failed to take action, the Agency of Environmental Conservation would arrange for the cleanup and would seek reimbursement from Gerrish. Vermont informed Gerrish that a State-managed cleanup is typically more expensive than a privately undertaken environmental response. Prior to its discussions with Vermont, Gerrish was unaware of the existence of any underground contamination on the Woodstock East property.

On June 11, 1985 Gerrish contacted Universal, its insurer, and demanded that Universal be responsible for all costs involved in monitoring and cleaning up the source of the pollution under the policy issued by Universal to Gerrish for the September 1, 1984 to September 1, 1985 period.

*The Universal Unicover III Policy*

The original policy issued to Gerrish by Universal was the Unicover III Motor Vehicle Dealers Policy approved by the Vermont Department of Banking and Insurance (VDBI) in 1980. The policy obliged Universal to "pay all sums which the INSURED legally must pay as damages ... because of INJURY" to which the policy applies. The policy defined "INJURY" as "bodily injury, sickness, disease, or disability ... or damage to or loss of use of tangible property." The policy contained certain exclusionary language in Part 500 Garage Coverage, including the following:

Exclusions—This insurance does not apply to:

. . . .

(m) INJURY caused by the dumping, discharge, or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental;

(n) INJURY caused by the discharge, release, or escape of any petroleum substance into or upon any body of water or water course, regardless of the nature of the discharge, release, or escape (whether accidental or not).

The same language was included in Part 950 General Liability Coverage in sections labelled (e) and (f).

Two other pertinent exclusions were included in the general liability portion of the Unicover III policy. They state:

Exclusions—This insurance does not apply to:

. . . .

(k) INJURY to property owned by, rented or leased to, used by, or in the care, custody or control of the INSURED. . . .

(l) INJURY to premises after YOU transfer ownership or possession to another, if INJURY is caused prior to the transfer.

Although Universal revised the Unicover III policy several times between 1980 and 1985, none of those alterations affected any of the exclusions quoted above.

Universal is a member of ISO, an insurance rating organization comprised of insurance companies. ISO provides various services for its members, including the drafting and filing of insurance forms with various state insurance departments. In 1982 Universal signed a broad authorization (Authorization), empowering ISO to act on its behalf before the VDBI and filed it with Vermont's Commissioner of Insurance. The document authorized ISO to file "rates, rules, [and] forms" with respect to general liability insurance, as well as several other insurance areas. Universal did not limit ISO's authority with respect to general liability insurance policies or pollution exclusions. The Authorization contained a provision that stated: "This Filing Authorization shall be deemed amended to the extent that any filing is made in your office directly by the undersigned company and is inconsistent with the filing of said Insurance Services Office."

In a circular dated June 4, 1984 ISO notified all its members that a new pollution endorsement had been developed, filed with the VDBI and approved for use. The new pollution provision provided insurance coverage for all pollution incidents, whether sudden or not, on a claims-made basis, subject to an aggregate limit, and was to be included in all ISO members' policies issued after July 1, 1984. The ISO circular informed members that they were automatically deemed to accept the endorsement; they had to contact the VDBI prior to July 1, 1984 if they did not want to be bound by the terms of the ISO endorsement. Universal did not contact the VDBI with respect to the endorsement. Furthermore, Universal had no relevant contact with the VDBI after receiving the ISO circular and before issuing the Gerrish insurance policy. A Universal interoffice memorandum made it clear that Universal was aware of the endorsement.

On September 1, 1984, while ISO's pollution endorsement was still in effect, Universal issued a general liability and automotive dealer insurance policy, the Unicover III policy, to Gerrish.

In April and May of 1985 Universal submitted to the VDBI multiple endorsements affecting pollution coverage under the Unicover III policy. After several exchanges between Universal and the VDBI and subsequent to Vermont's claim against Gerrish, the endorsements were approved with the proviso that whenever Universal specifically excluded pollution coverage under an insurance policy an Individual Risk filing had to be made with the VDBI.

*Procedural Background*

Based on the original Unicover III policy issued to Gerrish and the endorsements and amendments filed by Universal, Universal claimed that it would not cover the costs of cleaning up the Woodstock East fuel spill. Universal claimed that it never amended the Unicover III pollution exclusions, that the Gerrish fuel spill was definitely excluded under the policy as original-

ly written and, therefore, Gerrish was not covered.

Gerrish commenced this action in the United States District Court for the District of Vermont seeking a declaratory judgment that the Unicover III policy issued by Universal provided coverage for the gasoline cleanup claim asserted by Vermont.

Universal responded that the Unicover policy, which Universal claimed was unaffected by either Universal or ISO filings, excluded coverage of Gerrish's claim. Universal claimed that the VDBI had never withdrawn approval of the Unicover III policy as approved in 1980 and therefore continued use of that policy was appropriate. If the VDBI had established a practice of requiring pollution coverage in all insurance policies, urged Universal, not only was Universal unaware of the practice, but maintenance of such a practice was beyond the power of the VDBI. Universal also contended that the cleanup or "response" costs for the gasoline contamination were not tantamount to damages under the policy because they were equitable in nature, not legal under Vermont law. Finally, Universal contended that the "owned property" provision of Exclusion (k) found in the general liability part of the policy excluded coverage of the claim. Universal, therefore, maintained that it was not responsible for providing coverage for the gasoline cleanup.

The district court found that the Universal Unicover III policy as originally issued excluded Gerrish's claim. While the court concluded that the VDBI had authority to establish practices with respect to insurance exclusions, the court did not base its decision on this holding. The court went on to rule that the Unicover III pollution exclusions were negated by the 1984 ISO pollution endorsement. Thus, the district court concluded that under Vermont law, which we must apply, *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Gerrish was covered by the Unicover III policy as amended by the ISO, including pollution cleanup costs. Furthermore, the court found that the "owned property"

exclusion did not bar the claim. In sum, the district court granted Gerrish the declaratory judgment.

Universal appeals and reasserts on appeal the arguments raised below.

## DISCUSSION

First we must determine whether the policy provided coverage to Gerrish for injury resulting from gasoline-related pollution.

Universal contends that Gerrish is not covered for this gasoline leak because, as the district court held, the Unicover III policy as originally issued to Gerrish did not cover Vermont's claim, the VDBI never withdrew approval of the Unicover III policy and Universal never amended the pollution exclusions prior to Vermont's claim against Gerrish. Universal also raises an argument with respect to the practice of the VDBI in approving policies and requiring certain types of coverage. Universal claims that the VDBI lacks authority to withhold approval of policies until a specific type of coverage is provided. Universal urges that it was just such a practice of the VDBI that prompted ISO to file the pollution endorsement. What motivated the filing of the endorsement is irrelevant however. It is the effect of that endorsement that controls the outcome in this case.

We agree with the district court that the Universal Unicover III policy in the form in which it was issued to Gerrish did not cover Vermont's claim. The original policy language explicitly excludes from coverage the type of claim raised here. We conclude, however, that the policy was amended by Universal's agent, ISO, to provide coverage for this claim. The basis for this conclusion is rooted in the law of agency.

Under general agency principles the following holds true:

§ 140. Liability Based upon Agency Principles

The liability of the principal to a third person upon a transaction conducted by an agent ... may be based upon the fact that:

(a) the agent was authorized;

(b) the agent was apparently authorized; or

(c) the agent had a power arising from the agency relation and not dependent upon authority or apparent authority.

*Restatement (Second) of Agency* § 140, at 349 (1958).

Universal signed an authorization in 1982 permitting ISO to file, on Universal's behalf, amendments to its general liability policies. Universal did not limit that Authorization with respect to these policies or to the Unicover III policy specifically, nor did Universal ever withdraw the Authorization prior to Vermont's claim against Gerrish. Although Universal typically amended the Unicover III policy independently, it did not reserve the exclusive right to alter the Unicover III policy. When Universal filed the Authorization in 1982, it implicitly empowered ISO to alter the Unicover policy.

 The existence of an agency relationship may be shown in many ways. In an agency relationship, the agent has the power "to subject his principal to liability for an act done in furtherance of the agency." *Young v. Lamson*, 121 Vt. 474, 476, 160 A.2d 873, 875 (1960) (citing *Ploof v. Putnam*, 83 Vt. 252, 255, 75 A. 277, 277 (1910)). "[T]he real test, as to third persons, is whether the act, however trivial, is done by one for another, with the knowledge of the person sought to be charged as master, with his assent, expressed or implied, even though there was no specific request on his part to do the act in question." *Young*, 121 Vt. at 477, 160 A.2d at 875 (interpreting law of agency with respect to operation of motor vehicles) (citing *Brown v. Gallipeau*, 116 Vt. 290, 293, 75 A.2d 694, 696 (1950)). In the instant case ISO clearly acted on behalf of Universal with Universal's knowledge and with the authority conferred by Universal. In sum, ISO was Universal's agent and was empowered to bind Universal.

Universal claims that even in an express agency context, absent reliance by a third party to the detriment of that third party, there can be no liability on the principal. In so arguing, Universal attempts to circumvent basic principles of contract and insurance law. The ISO endorsement was, in effect, part of the insurance contract between Universal and Gerrish. The ISO endorsement affected all policies issued after July 1, 1984. The Gerrish policy was issued on September 5, 1984, while the ISO endorsement was in effect. The ISO endorsement, therefore, affected the Gerrish policy and negated the original pollution exclusions therein set forth.

 It is a basic tenet of insurance law that once an insurance contract is accepted by both parties, the parties are bound by it. *See* 1 *Couch Cyclopedia of Insurance Law* § 12:16, at 807 (Rev.2d ed. 1984). An insured, absent fraud or misrepresentation, is bound by the terms of the policy and "cannot thereafter complain that he did not read or know its terms." *Id.* Likewise, the insurer is bound by those same terms, regardless of whether the insured is aware of them. The parties are bound to the terms of the policy on the formation of a contract of insurance. A contract is formed when the insured accepts a policy and pays the premium and the insurer accepts the premium. By accepting the policy and paying the premiums the insured agrees to the terms of the insurance contract. By the same token, when the insurer issues a policy and accepts payment for insurance coverage under that policy, the insurer agrees to assume the risks enunciated in the policy. *See* 6 *Couch Cyclopedia of Insurance Law* § 31:10, at 19–20 (Rev.2d ed.1985).

 Applying these general rules of contract and insurance law to the instant case, we see that Gerrish was entitled to coverage for the State's pollution claim regardless of any lack of awareness on its part of the specific terms of the contract. The pollution endorsement filed by ISO affected all policies issued after July 1, 1984, including the Gerrish policy. Despite Gerrish's lack of awareness of its inclusion, the pollution endorsement was part of the Unicover III policy, approved by the VDBI, for which Gerrish contracted and on which Gerrish paid premiums. Universal failed to opt out of the endorsement prior to issuing the policy to Gerrish. It accepted the pre-

miums tendered by Gerrish for the amended Unicover III policy. As already stated, Universal was undeniably aware of the endorsement. The contract of insurance formed between Gerrish and Universal, therefore, included the ISO pollution endorsement.

Universal contends that because the ISO endorsement was inconsistent with the original policy and prior Universal amendments to it the Authorization did not apply to the endorsement. This argument is based on the inclusion in the Authorization which states:

> This Filing Authorization shall be deemed amended to the extent that any filing is made directly by [Universal] and is inconsistent with the filing of said Insurance Services Office.

Under Universal's interpretation, any ISO filing inconsistent with anything previously filed by Universal would be deemed amended by the relevant Universal filing. This explanation, however, is inconsistent with the ISO Authorization itself. ISO was empowered to make filings and to file amendments and endorsements on behalf of its members, including Universal. An "amendment" to a policy is, by definition, "a change for the better; improvement" or "a correction of errors, faults, etc." *Webster's New World Dictionary* 43 (2d College ed. 1970). A "change" or "correction" is necessarily different from or perhaps inconsistent with that which is being changed or corrected. Furthermore, the ability to amend implies the existence of some pre-existing filing to be amended. Thus, there had to be a policy in existence, whether filed by Universal or ISO, in order for ISO to amend a policy. The Authorization permitting ISO to file amendments would be eviscerated if we accepted Universal's interpretation and concluded that ISO was not permitted to amend the existing policies. We reject such an interpretation.

Universal's position also fails to recognize the time sequence implicit in the ISO Authorization. The Authorization is "deemed amended" when Universal makes a filing inconsistent with a filing by ISO.

A Universal filing cannot be inconsistent with an ISO filing unless there is a preexisting ISO filing at the time the Universal filing is made. In the instant case, Universal made no relevant filings between the date the ISO amendment was submitted to the VDBI for approval and the date of issuance of Gerrish's policy. Universal, therefore, made no filings inconsistent with ISO filings such that the Authorization should be deemed amended prior to the issuance of the policy to Gerrish.

We conclude that the district court correctly held that the ISO pollution endorsement applied to the Gerrish policy and afforded Gerrish coverage against the State's claims.

Universal next contends that the district court erred in concluding that the environmental response costs involved in the State's claim are "damages" as the term is used in the Unicover III policy and that the "owned property exclusion" in the policy was inapplicable. Universal bases its claim on the language of the policy. Coverage Part 950—General Liability states, under the heading "Insuring Agreement," that Universal "will pay all sums which the INSURED legally must pay as damages . . . because of INJURY to which this Coverage Part applies." Exclusion (k), the "owned property" exclusion also contained in Coverage Part 950, states: "This insurance does not apply to: INJURY to property owned by, rented, or leased to, used by, or in the care, custody or control of the INSURED." Injury is defined in the policy as "damage to . . . tangible property." Universal's interpretation of these portions of the policy and its technical reading of the terms result in its conclusion that environmental response costs are not sums that Gerrish must legally pay as damages because of injury, and that costs to clean up Gerrish's land are excluded under the policy. Universal's arguments are unpersuasive.

■ The term "damages" is not defined in the Unicover III policy issued to Gerrish. Vermont law provides some guidance on this issue however. Vermont law is clear that policies are to be interpreted in favor

of complete coverage. *See City of Burlington v. Glens Falls Ins. Co.,* 133 Vt. 423, 424, 340 A.2d 89, 90 (1975). Limitations and exclusions in policies are to be strictly and narrowly construed. *Id.* We find no cases interpreting Vermont law, however, that determine whether environmental response costs or cleanup costs constitute damages. Other courts are split on this issue. *Compare, e.g., Avondale Indus. v. Travelers Indem. Co.,* 887 F.2d 1200, 1207 (2d Cir.1989) (under New York law damages include cleanup costs), *and Ray Indus. v. Liberty Mut. Ins. Co.,* 728 F.Supp. 1310, 1314–15 (E.D.Mich.1989) (under Michigan law "suit" includes environmental cleanup action and insurer must defend), *with Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1352–54 (4th Cir.1987) (cleanup costs not damages under Maryland law), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). The question is further clouded by the fact that the damages must be "for injury," and "injury" is defined in the policy as "damage" to property.

In an earlier case we were required to construe under New York law the term "damages" in an insurance policy containing pollution exclusions similar to those in the instant case. *See Avondale,* 887 F.2d 1200. In *Avondale* we concluded that the term "damages," when given its natural meaning, could include cleanup costs, particularly because an ordinary businessman reading the policy would believe that "damages" included such costs.

Vermont, like New York, requires that the language in an insurance policy be given its plain and ordinary meaning. *Kusserow v. Blue Cross–Blue Shield Plan of N.H.–Vt.,* 140 Vt. 328, 333, 437 A.2d 1114, 1117 (1981). The Unicover III policy states that Universal "will pay all sums which the INSURED legally must pay as damages ... because of INJURY to which this Coverage Part applies." We conclude that the plain and ordinary meaning of this clause is that Universal agreed to pay all sums Gerrish was ordered by a court to pay, regardless of the technical, legal characterization of the particular judgment. Even if we conclude that the term "damages" is ambiguous, however, the result is the same because under Vermont law all ambiguities in an insurance contract must be construed in favor of the insured. *Sanders v. St. Paul Mercury Ins. Co.,* 148 Vt. 496, 500, 536 A.2d 914, 916 (1987). In this instance, construing the term "damages" in favor of Gerrish results in coverage under the policy. Thus, if Gerrish is ordered by a court to pay the environmental response costs associated with the gasoline leak, Universal must bear the financial burden. We believe that the Vermont courts would reach the same conclusion. *Cf. Bean v. Sears, Roebuck & Co.,* 129 Vt. 278, 282, 276 A.2d 613, 616 (1971) (repair and restoration costs may be a proper measure of damages under Vermont law).

The district court also correctly concluded that because property beyond that owned, used, or controlled by Gerrish was damaged, Exclusion (k) of Part 950 of the Unicover III policy did not apply. Universal disputes this, claiming that Gerrish failed to provide evidence that any other landowner suffered a loss of use of his property or diminution in property value as a result of the gasoline leakage. We find Universal's argument unpersuasive.

The pollution at issue in the instant case was, at the time of the district court decision, "a plume of petroleum product (dissolved hydrocarbons in groundwater) which is located in the subsurface strata of the Woodstock East property. It has migrated to an adjacent property of the Marble Bank as well as into the right of way for a public highway (Route 4)." It was also found that the pollution is entering a "natural drainage stream" flowing into the Ottauquechee River. Universal admits that the petroleum seepage may demonstrate "an imminent and substantial threat to the environment." The presence of the pollution in the drainage stream and Ottauquechee River and groundwater clearly represent actual damage to the surface and groundwater and deterioration of the groundwater quality both on and off of the Gerrish property. While the specific effects of this pollution migration have not been provided,

such effects are not required in this declaratory judgment action. It is only proof of damage to property not owned, controlled or possessed by Gerrish that must be proffered. Gerrish has met this burden. Its claim is not barred by Exclusion (k). Universal, therefore, is responsible for the cleanup costs of the property damaged by the plume. This may require Universal to bear the cost to clean up the leakage on Gerrish's property for the purpose of abating seepage to neighboring property. The cost of repairing Gerrish's property is inextricably linked to Vermont's claims. We agree with the district court that the cost of "on premises remedial work, as well as any off premises remediation, is not excluded by the language of exclusion (k)." 754 F.Supp. at 366.

## CONCLUSION

We conclude that the ISO endorsement applied to the Gerrish policy. The endorsement negated Universal's pollution exclusions and required that Universal provide coverage to Gerrish for the State of Vermont's pollution claim. We further conclude that the environmental response costs fall within the definition of damages as that term is used in the insurance policy issued by Universal to Gerrish. In so holding, we do not pass upon the merits of Vermont's claims against Gerrish.

For the foregoing reasons, the judgment of the district court is affirmed.