**GERRISH CORPORATION and Marvin Wolf, in his individual capacity and as general agent on behalf of Woodstock East Associates, a limited partnership, Plaintiffs,**

v.

**AETNA CASUALTY AND SURETY COMPANY and The Standard Fire Insurance Company, Defendants.**

No. 2:94–cv–72.

United States District Court, D. Vermont.

Nov. 8, 1996.

Robert E. Manchester, Manchester Law Offices, P.C., Burlington, VT, for Gerrish Corporation, Marvin Wolf.

Thomas Emerick McCormick, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT, Kathleen S. Moore, James L. Ackerman, Maura D. Sullivan, Glenn E. Brace, Day, Berry & Howard, Boston, MA, for Aetna Casualty and Surety Company.

Thomas Emerick McCormick, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT, Kathleen S. Moore, James L. Ackerman, Glenn E. Brace, Day, Berry & Howard, Boston, MA, for Standard Fire Insurance Co.

Thomas Emerick McCormick, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT, for Aetna Casualty and Surety Company, Standard Fire Insurance Co.

Robert E. Manchester, Manchester Law Offices, P.C., Burlington, VT, for Gerrish Corporation, Marvin Wolf.

John W. Kessler, Assistant Atty. Gen., Vermont Attorney General's Office, Montpelier, VT, for State of Vermont.

## OPINION AND ORDER

SESSIONS, District Judge.

In this declaratory judgment action Plaintiffs ·Gerrish Corporation ("Gerrish") and Marvin Wolf ("Wolf"), on behalf of himself and Woodstock East Associates ("WEA"), seek a· ruling that Defendants The Aetna Casualty and Surety Company and The Standard Fire Insurance Company ("Aetna") are obligated to defend and indemnify them in connection with a claim brought by the State of Vermont for clean-up of environmental contamination of a site in Woodstock, Vermont. The matter is before the Court on objections by Plaintiffs and Defendants to the Magistrate Judge's Report and Recommendation that their respective motions for summary judgment be denied.

## BACKGROUND

The facts of this case are discussed in the Report and Recommendation, and need not be repeated at length here. Gerrish owns a

shopping center in Woodstock, Vermont known as "Woodstock East." Gerrish also operates an automotive dealership and a car wash and gas station on the property. In 1972, the gas station had underground gasoline storage tanks installed. In 1973, Gerrish discovered that gasoline was leaking from one of the tanks. The tanks were excavated and the leak repaired.

On May 31, 1984, WEA entered into an agreement with Gerrish to lease Woodstock East with an option to purchase the property. Gerrish became a sublessee of WEA, however, for the portion of Woodstock East occupied by the dealership and the gas station, and continued to operate the businesses. WEA never exercised its option to purchase Woodstock East, and Gerrish remained the owner of the property.

Gerrish carried insurance on the property through Universal Underwriters Insurance Company ("Universal"). Pursuant to the terms of the Lease and Option to Purchase, WEA also obtained comprehensive liability insurance on the property from Aetna, and Gerrish was added to this policy "as their interests may appear" ("ATIMA").

Aetna Special Multi–Peril Policy Number 009 SM 772094 FCS ("the 1984 Policy" or "the Policy") covered the Woodstock East property from May 31, 1984 to May 31, 1985.

On May 2, 1985 the State of Vermont Agency of Environmental Conservation ("Vt. AEC" or "the State") notified Wolf and Gerrish that Woodstock East was the source of petroleum pollution which was entering a natural drainage stream that empties directly into the Ottauquechee River. Pursuant to Vt.Stat.Ann. tit. 10, § 1283, the State gave notice to Gerrish as the operator of the businesses, and Wolf, whom it believed at the time to be the owner of the property, that as potentially responsible parties they could voluntarily undertake corrective measures.

On June 11, 1985, Gerrish notified Universal by letter of the State's claim. On August 23, 1985, WEA notified Aetna by letter of the State's claim. The insurance companies jointly hired Ground Water Technology, Inc. ("GTI") to investigate the contamination.

GTI reported in 1988 that petroleum contamination existed in the soil and groundwater and had migrated onto neighboring properties and into a tributary of the Ottauquechee River.

This is not the first insurance coverage action related to the petroleum contamination of this property. In 1989, Gerrish brought an action in this Court against Universal, seeking a declaratory judgment that its liability insurance policy provided coverage for petroleum pollution cleanup. Having obtained a judgment in its favor, *see Gerrish Corp. v. Universal Underwriters Ins. Co.*, 754 F.Supp. 358 (D.Vt.1990), *aff'd*, 947 F.2d 1023 (2d Cir.1991), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992), Gerrish then filed a bad faith action against Universal, *Gerrish Corp. v. Universal Underwriters Ins. Co.*, No. 91–cv–15 (D.Vt.). That case was settled in 1993 by a payment from Universal to Gerrish and its president, Kurt Gerrish, in the amount of $2.7 million.

In 1991, WEA filed a negligence action in state superior court against Woodstock Structures, Inc. ("WSI"), the installers of the underground gasoline storage system, and obtained a default judgment of $630,488 plus interest and costs. *Wolf v. Woodstock Structures, Inc.*, No. S305–91–WrC (Windsor Superior Court). In March 1994, WEA brought an action in this Court against WSI's insurer, United States Fidelity & Guaranty, seeking to satisfy the judgment. *Wolf v. United States Fidelity & Guar. Co.*, No. 2:94–cv–70 (D.Vt.).

Gerrish failed to use any of its settlement from the Universal bad faith action to clean up the site. When the State of Vermont learned that Gerrish had not used any of the proceeds to clean up the site, it filed suit against Gerrish in Windsor Superior Court on November 4, 1993. *State of Vermont v. Gerrish Corp.*, No. S0559–93WrC (Windsor Superior Court).[1] In December 1995, the superior court ordered Gerrish and its president to clean up the site. The action has been stayed as of September 24, 1996, because Gerrish filed for bankruptcy.

---

1. The complaint was later amended to add Kurt Gerrish and Marble Bank as defendants.

On November 9, 1993, Gerrish notified Aetna by letter of the State's suit. On March 11, 1994, Plaintiffs filed the instant action, seeking a declaration that the 1984 Aetna Policy covers the State's claim for pollution remediation.

The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). Plaintiffs and Defendants both moved for summary judgment.

The Magistrate Judge recommended that the parties' cross-motions for summary judgment be denied. He recommended that this Court conclude that the 1984 Aetna Policy covers the State of Vermont's pollution claim because: Gerrish was an insured party under the 1984 Aetna Policy; a liberalization clause in the Policy provided for the incorporation into the Policy of the ISO endorsement deleting the pollution exclusion; and the Policy provided Gerrish, as owner of the property, with coverage for the State of Vermont's claim. He found that whether Gerrish's late notice to Aetna precluded coverage involved unresolved issues of material fact; and that Aetna had not waived its coverage defenses, nor was it estopped from denying liability under the Policy. Finally, he recommended that, absent any coverage defenses, Aetna should be obligated to contribute to any insurance settlement with or judgment in favor of Gerrish in proportion to the liability limits in the policies involved. Magistrate's Report and Recommendation, November 13, 1995 ("R & R").

The Plaintiffs objected to the magistrate's setoff ruling. Specifically they contended that the Comprehensive General Liability coverage of the 1984 Policy was primary insurance, so that Aetna would not be entitled to any setoff, and that the Excess Indemnity (Umbrella) Policy's coverage would be triggered once the primary CGL coverage limits were exhausted.

The Defendants objected to the magistrate's setoff ruling as well. In addition, they disagreed with the conclusions that issues of fact remained concerning whether late notice barred coverage, and that the 1984 Aetna Policy covers the State of Vermont's pollution claim.

A district judge must make a de novo determination of those portions of a magistrate judge's report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* After careful review of the file, the Recommendation, the objections and responses to objections, the Court accepts the recommendation that the cross-motions for summary judgment be denied, and supplements the findings and reasoning in the Magistrate Judge's Report and Recommendation as set forth below.

### DISCUSSION

Summary judgment should be rendered for a moving party if the court finds that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. *Id.*, at 325, 106 S.Ct. at 2553–54. All justifiable inferences are to be drawn in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

### I. *Named insureds under the 1984 Aetna Policy*

The Magistrate Judge's recommendation is adopted, for the reasons stated in his report. By the plain language of the policy, Gerrish is a named insured for any claims arising out of its capacity as owner/lessor of the Woodstock East site.

If, alternatively, the Court were to look to extrinsic evidence to determine whether the parties intended that Gerrish be covered under the policy, because it found that the policy language is ambiguous and the meaning of ATIMA unclear from the document

itself, it would also find that Gerrish was an insured under the Policy.

■ Aetna has admitted that "Gerrish Corp. ATIMA" was added to the Policy as a named insured for the purpose of covering claims arising out its ownership interest in the site. Dobler Aff. at 3–4 (Paper 59, App. C). The issue then is whether the State of Vermont's claim arises out of Gerrish's ownership interest in the site.

In 1985 the Vermont legislature enacted the Hazardous Waste Act. Hazardous Waste Act, No. 70, 1985 Vt. Acts & Resolves 190. Among its provisions it amended § 1283 of Title 10, the statute under which the State of Vermont brought its claim against Gerrish, and it added § 6615, "Liability." *See* Vt.Stat.Ann. tit. 10, § 1283 (1984 and Supp.1996); Vt.Stat.Ann. tit. 10, § 6615 (1993 and Supp.1996).

Although § 1283 does not define who may be held responsible for the cleanup of environmental contamination, § 6615 is instructive. Section 6615 subjects both owners and operators of facilities which involve the discharge of hazardous waste into air or water to liability for release or threatened release of hazardous material. *See also* Vt.Stat.Ann. tit. 10, § 6602.

Because the State of Vermont's claim against Gerrish for pollution remediation may arise out of Gerrish's ownership interest in the site, and Gerrish's ownership interest in the site is covered by the Policy, Gerrish is an insured party with respect to the pollution remediation claim.

## II. *Nature of the State of Vermont's claim against Gerrish*

■ Aetna objected to the Magistrate Judge's finding that the State of Vermont's claim was brought against Gerrish in its capacity as owner/lessor, rather than as operator of the garage business. In fact, the Magistrate Judge found that the State brought the pollution claim against Gerrish as both owner and operator, R & R at 15, and this Court agrees. The State of Vermont notified both the owner of the property

and the operator of the car dealership and the retail gasoline business that it considered these entities potentially responsible parties under Vt.Stat.Ann. tit. 10, § 1283. Vt. AEC letters dated May 2, 1985 (Paper 3, Atts. E and F).[2] Gerrish as owner and Gerrish as operator is potentially liable for the gasoline pollution.

## III. *Pollution Exclusion*

■ The Magistrate Judge's recommendation is adopted, for the reasons stated in his report. The ISO endorsement GL 01 54 deleting the pollution exclusion applied only to policies issued on or after July 1, 1984. Because the Aetna Policy was issued on May 31, 1984, the ISO endorsement did not automatically become part of the Policy. However, the Aetna Policy's Liberalization Clause incorporated the pollution deletion endorsement into the policy.

The Policy's Liberalization Clause stated:

In the event any filing is submitted to the insurance supervisory authorities on behalf of the company, and: (a) the filing is approved or accepted by the insurance authorities to be effective while this policy is in force or within 45 days prior to its inception; and (b) the filing includes insurance forms or other provisions that would extend or broaden this insurance by endorsement or substitution of form, without additional premium; the benefit of such extended or broadened insurance shall inure to the benefit of the insured as though the endorsement or substitution of form had been made.

MP 0090 ¶ 8 (Paper 3, Att. C).

The endorsement was filed with the authorities on April 30, 1984. The filing was approved, to be effective July 1, 1984, while the 1984 Aetna Policy was in force. The filing contained a provision that would extend or broaden the policy's coverage by deleting the pollution exclusion. The endorsement was to be added to general liability coverage policies without payment of an additional premium, "unless written application for a charge, with the consent of the insured is

---

**2.** In its notice, the State of Vermont Agency of Environmental Conservation originally identified Marvin Wolf as the owner of the property. Wolf in fact leased the property from Gerrish.

made to the Commissioner pursuant to the requirements of the Vermont Statutes." *Gerrish v. Universal,* 754 F.Supp. at 368–69; ISO General Liability other than Professional Liability Exception Page (Paper 3, Att. K). No such application was made. The requirements of the Liberalization Clause having been met, endorsement GL 01 54 became part of the 1984 Policy.

## IV. *Notice*

■ The Magistrate Judge found that Aetna received notice of the State of Vermont's pollution claim from WEA by letter dated August 23, 1985. Gerrish did not contact Aetna directly until November of 1993. Both events occurred outside the policy period of May 31, 1984 to May 31, 1985. The Magistrate Judge concluded that unresolved issues of material fact existed concerning whether there were circumstances in this case which would excuse Gerrish's late notice to Aetna.

The pollution exclusion deletion endorsement, GL 01 54, states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage caused by an occurrence to which this insurance applies provided that the claim for such damages is first made in writing against the insured and reported to the company during the policy period.
>
> A claim by a person or organization seeking damages shall be deemed to have been made when written notice of such claim is received by the insured or by the company, whichever comes first.

GL 01 54 Contamination or Pollution Exception (Vermont) II A (Paper 3, Att. D).

Aetna contended that the endorsement clearly and unambiguously required that within the policy period the insured must receive a written claim and report it to the company. Aetna further objected that no issues of fact existed regarding timeliness of notice or excuse for delay.

■ The rule in Vermont is that substantial compliance with notice requirements will suffice. *Putney School, Inc. v. Schaaf,* 157 Vt. 396, 404–05, 599 A.2d 322 (1991).

The purpose of a notice provision is to give the insurer the opportunity to make a timely and adequate investigation of potential claims in order to assess its rights and liabilities. *Id.* at 405, 599 A.2d 322. Failure to give timely notice will release an insurer from the obligations imposed by the insurance contract, even though no prejudice may have resulted. *Houran v. Preferred Accident Ins. Co.,* 109 Vt. 258, 272, 195 A. 253 (1938). There may, however, be circumstances that will explain or excuse a delay in giving the required notice. *Id.* at 268, 195 A. 253. *See also Vermont Gas Sys., Inc. v. United States Fidelity & Guar. Co.,* 805 F.Supp. 227, 232 (D.Vt.1992).

Although the Magistrate Judge found that WEA provided written notice of the State of Vermont's claim to Aetna on August 23, 1985, according to material submitted by Plaintiffs in support of their Motion for Summary Judgment, Wolf, on behalf of WEA, had spoken with an Aetna claims adjuster on or before May 24, 1985 concerning the gasoline leak. McKenna letter dated May 24, 1985 (Paper 48, Att. R).

Whether Wolf's oral communication with Aetna constitutes substantial compliance with Gerrish's obligation to provide notice under the provisions of the Policy involves issues of unresolved material fact, and summary judgment is therefore inappropriate. Moreover, if notice is found to be untimely, whether there are circumstances in the present case which will excuse Gerrish's delay also involves issues of material fact, precluding summary judgment. *Houran,* 109 Vt. at 268, 195 A. 253; *Vermont Gas,* 805 F.Supp. at 232.

## V. *Setoff*

■ The Magistrate Judge found that property damage coverage under the 1984 policy was excess to the Universal policy coverage, rather than primary insurance, by operation of a section of the Broad Form Comprehensive General Liability Endorsement to the policy, GL 04 04 ("GL 04 04") (Paper 3, Att. C).

The 1984 Policy provided liability coverage for bodily injury and property damage. In a

section entitled "Other Insurance," applicable to the policy's liability coverage, it stated that

[t]he insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

Special Multi–Peril Policy Conditions and Definitions ("MP 00 90"), Conditions Applicable to Section II, ¶ 7 (Paper 3, Att. C).

GL 04 04, in relevant part, modified the property damage liability coverage by providing that it be "excess insurance over any valid and collectible property insurance ... available to the insured, such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the Other Insurance Condition of the policy is amended accordingly." GL 04 04, at VI(B).

Both parties objected to the magistrate's finding that the Aetna Policy provided excess coverage.

The Plaintiffs objected that the "Other Insurance" clause did not reduce the Comprehensive General Liability coverage provided by the policy; in other words, that the Aetna policy provided primary coverage, which would not be reduced or set off by any sums received under other policies of insurance.

The Defendants objected that the language in GL 04 04 made the Aetna Policy excess to other first party property insurance available to the insured, and not excess to other comprehensive general liability, or third party insurance.

This Court has previously found that the Universal Policy provided Gerrish with liability coverage for property damage in connection with the State of Vermont's claim. *Gerrish v. Universal*, 754 F.Supp. at 372. Coverage was not available under the Property Coverage Part of the Universal Policy. The Universal Policy provided: "this insurance is excess over any other insurance, whether it is collectible or not." 1984–1985

Unicover Policy, General Conditions at 6 (Paper 3, Att. O).

This Court now finds that the Aetna Policy's liability coverage is primary insurance, according to the plain language of the Policy. The GL 04 04 clause does not convert the coverage to excess with regard to the Universal Policy, because the Universal Policy did not provide "valid and collectible" property insurance. Because the Universal Policy is excess, Aetna's liability under its 1984 Policy is not reduced by the existence of the other insurance, according to the 1984 Policy. MP 00 90, II, ¶ 7.

■ Aetna has objected that allowing the plaintiffs to recover on the Aetna Policy would constitute an impermissible double recovery, because Gerrish has already collected $2.7 million from Universal. The Plaintiffs have objected that there is no proof that the settlement with Universal of their bad faith action included payment for the pollution remediation costs at issue in this action.

■ While it is true that a plaintiff may not receive double recovery for his injuries, *Brunet v. American Ins. Co.*, 660 F.Supp. 843, 849 (D.Vt.1987), an insurer is bound by the terms of its policy. *Gerrish v. Universal*, 947 F.2d at 1028. Obviously, the issues of the cost of site cleanup and whether the Universal settlement included this cost are material and in dispute, and summary judgment is not appropriate at this time.

If Aetna can show that the Universal settlement included site cleanup costs, then it will not be obliged to give Gerrish a double recovery simply because its policy of insurance also provided coverage. However, Aetna cannot evade its contractual responsibilities under the Policy by simply citing the Universal settlement. *See Town of Windsor, Vt. v. The Hartford Accident & Indem. Co.*, 885 F.Supp. 666, 669 (D.Vt.1995) (in order to escape the duty to defend, the burden is on the insurer to show that the claims against the insured are entirely excluded from coverage).

Gerrish has also argued in its objections to the R & R that this Court should determine that Aetna's excess coverage has been reached because when Universal settled with

Gerrish, a policy release was executed, releasing Universal from any obligation to Gerrish under its policy for any claims concerning the gasoline leak. Once the Aetna Policy's primary coverage is exhausted, Gerrish contends, the Aetna Umbrella Policy's excess coverage is triggered, without regard to any contribution from the Universal Policy's excess coverage.

This issue was not briefed or argued on the cross-motions for summary judgment, and the issue is furthermore premature. It is not clear, from the record before this Court, that the Aetna Policy's primary coverage will be exhausted. Resolution of this issue depends upon a determination of the cost of site cleanup and the degree to which the Universal settlement included this cost. Moreover, the Court is reluctant to construe the effect of the "Other Insurance" clauses in the Aetna and Universal policies without the benefit of briefing from both parties.

Accordingly, the Magistrate Judge's recommendation that Aetna and Universal be obligated to contribute to any settlement and/or judgment in proportion to the liability limits in their respective policies is rejected. The Aetna Policy provides primary coverage. If the facts develop that the Aetna Policy's coverage of $500,000 is or is likely to be exhausted, then the Court will reach the issue of the interplay between the Universal Policy and Aetna's Umbrella Policy.

## CONCLUSION

The parties' cross-motions for summary judgment (papers 14 and 42) are DENIED. The Aetna Policy provides coverage for the State of Vermont's claim against Gerrish in its capacity as owner of the property. Aetna, however, has not waived its right to assert coverage defenses, and the issue of late notice requires further factual development. The issue of whether and to what extent the Universal settlement included the cost of pollution remediation likewise awaits further factual development.