**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LESLIE TAYLOR; CAROLINE
NICHOLE COOKE; JACOB
COOKE; COLORADO CROSS-
DISABILITY COALITION,

     Plaintiffs - Appellants,

v.

COLORADO DEPARTMENT OF
HEALTH CARE POLICY AND
FINANCING; SUE BIRCH, in her
official capacity as Executive
Director of the Colorado Department
of Health Care Policy and
Financing,

     Defendants - Appellees.

No. 14-1161

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:12-CV-00300-PAB-KMT)**
_____

Kevin W. Williams (Andrew Christopher Montoya, with him on the briefs)
Colorado Cross-Disability Coalition Legal Program, Denver, Colorado, for
Plaintiffs-Appellants.

W. Eric Kuhn, Assistant Attorney General, (Cynthia H. Coffman, Attorney
General, with him on the brief) Office of the Attorney General, Denver,
Colorado, for Defendants-Appellees.
_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.

_____

The Medicaid program is a federal-state joint venture that provides medical assistance to low-income individuals like one of the plaintiffs, Ms. Leslie Taylor. This assistance is provided to Ms. Taylor through two programs administered in Colorado. One program subsidizes the cost of attendants who provide in-home care; the other program compensates recipients for mileage when they use their vehicles for medical appointments.

Ms. Taylor owns a car, but she cannot drive because of a disability. To get to her medical appointments, she asked the Colorado agency to combine her benefits through the two programs. If approved, this combination would allow the agency to pay attendants for time driving Ms. Taylor to and from her medical appointments. The agency refused, and the plaintiffs allege that the refusal constitutes discrimination against Ms. Taylor based on her disability.[1]

On appeal, we ask: Does the agency's refusal to combine its programs constitute discrimination against the disabled? We conclude the agency did not discriminate against Ms. Taylor based on her disability; she

_____

[1] The plaintiffs include not only Ms. Taylor, but also two of her attendants (Ms. Caroline Cooke and Mr. Jacob Cooke) and a nonprofit organization (Colorado Cross-Disability Coalition). But all of the plaintiffs' claims involve discrimination against Ms. Taylor based on her disability.

2

obtained the same benefits that all other Medicaid recipients would have received in the same circumstances.

## I.   Ms. Taylor is the beneficiary of two Colorado Medicaid programs.

Ms. Taylor's disability requires her to have attendants at home and when she travels, including when she travels to medical appointments. Her attendants are paid through a Colorado Medicaid program, Consumer Directed Attendant Support Services, which the defendants administer. But this program does not allow compensation for the attendants' time spent driving individuals to medical appointments. *See* Colo. Code Regs. § 2505-10:8.489.30(Q).

Colorado also provides transportation assistance to Medicaid recipients through the Non-Emergent Medical Transportation program. This program is administered county by county, paying "for the least expensive transportation suitable to the client's condition." *Id.* at § 2505-10:8.014; Appellants' App'x at 23.

In 2009, Ms. Taylor asked administrators of the medical transportation program to compensate her attendants for time spent driving to and from medical appointments. The administrators in Ms. Taylor's county ultimately determined that they would provide a wheelchair-accessible van for Medicaid recipients over 60 years old and a per-mile reimbursement for all other Medicaid recipients. At the time, Ms. Taylor

3

did not qualify for the van service because she was under 60 years old. Accordingly, Ms. Taylor's only option was the per-mile reimbursement.[2]

The plaintiffs allege the per-mile reimbursement constitutes discrimination by inadequately compensating Ms. Taylor for her transportation costs. According to the plaintiffs, this discrimination violates the Americans with Disabilities Act and the Rehabilitation Act. The district court dismissed these claims and denied the plaintiffs' motion for reconsideration. The plaintiffs appeal both rulings.

## II.    The dismissal was correct.

For the dismissal, we engage in de novo review. *Keith v. Rizzuto*, 212 F.3d 1190, 1192 (10th Cir. 2000). In applying de novo review, we conclude that the dismissal was correct.

### A.    We view the allegations in the complaint favorably to the plaintiffs.

Applying de novo review, we assume that the factual allegations in the complaint are true. *Id.* The resulting question is whether these factual allegations plausibly suggest that the defendants are liable. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

---

[2]    Ms. Taylor has since turned 60 years old, qualifying her for the county's van service. This fact does not moot the appeal because (1) the plaintiffs request compensation for the attendants' previous driving time, and (2) the plaintiffs allege that the van service is inadequate.

4

**B.** **The plaintiffs do not allege facts that would constitute discrimination against Ms. Taylor based on her disability.**

To apply this standard, we are guided by the elements of the plaintiffs' claims. *See id.* at 1192 ("While the [Rule] 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."). Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act contain different elements, but this appeal involves an element common to both statutes: discrimination against Ms. Taylor based on a disability.[3] *See* 42 U.S.C. § 12132 (Americans with Disabilities Act); 29 U.S.C. § 794(a) (Rehabilitation Act). Thus, both statutory claims trigger the same issue: whether the Colorado agency's actions were discriminatory. To decide this

---

[3]     To state a claim under Title II of the Americans with Disabilities Act, the plaintiffs must show that (1) Ms. Taylor is a qualified individual with a disability, (2) she was excluded from participation in or denied the benefits of Medicaid services, programs, or activities, or was otherwise discriminated against by the Colorado agency, and (3) this exclusion, denial of benefits, or discrimination was by reason of Ms. Taylor's disability. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

By contrast, to state a prima facie claim under § 504 of the Rehabilitation Act, the plaintiffs must show that (1) Ms. Taylor is disabled, as the Rehabilitation Act defines, (2) Ms. Taylor would be "otherwise qualified" to participate in the Colorado Medicaid program, (3) the Colorado Medicaid program receives federal financial assistance, and (4) the Colorado Medicaid program discriminated against Ms. Taylor. *See Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007).

5

issue, we apply the same standards to discrimination claims under both statutes. *See Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725-26 (10th Cir. 2011); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).

The plaintiffs argue that the agency discriminated against Ms. Taylor, raising four appeal points:

1. The Colorado agency discriminated by refusing to exercise its discretion to compensate attendants for driving Ms. Taylor.

2. The Colorado agency discriminated in deciding to issue only a per-mile reimbursement because the agency was obligated to fully compensate Ms. Taylor.

3. The Colorado agency discriminated by refusing to pay for a driver even though Ms. Taylor could not drive and similarly situated recipients obtained subsidies for driving expenses.

4. The Colorado agency was obligated under 28 C.F.R. § 35.130(b)(7) to modify the medical transportation program.

We reject each argument.[4] As a result, we conclude that the complaint does not state a valid claim for discrimination under the federal statutes.[5]

---

[4] The Supreme Court has assumed that the Rehabilitation Act "reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped." *Alexander v. Choate*, 469 U.S. 287, 299 (1985). But the plaintiffs have disavowed any challenge based on disparate impact. *See* Oral Arg. at 12:55-13:10. Thus, we express no view on whether the Colorado Medicaid programs had an "unjustifiable disparate impact" on the disabled who are unable to drive themselves to their medical appointments.

[5] On appeal, the plaintiffs also argue that the Colorado agency intentionally discriminated against Ms. Taylor and its actions were "motivated by discriminatory animus." Appellants' Opening Br. at 35. But the plaintiffs did not raise this argument in the district court. We would ordinarily review this argument under the plain-error standard. *See*

6

**1. The Colorado agency did not discriminate against Ms. Taylor by declining to pay the attendants for their driving time.**

The plaintiffs contend that the Colorado agency had the "flexibility" to pay the attendants for driving Ms. Taylor. Appellants' Opening Br. at 24. But the agency's flexibility does not create a statutory duty.

"The [federal Medicaid] Act gives States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" *Alexander v. Choate*, 469 U.S. 287, 303 (1985) (quoting 42 U.S.C. § 1396a(a)(19)). With this discretion, states can decline to alter a benefit's scope "simply to meet the reality that [certain] handicapped have greater medical needs." *Id.* As a result, the Colorado agency could choose not to pay attendants for their driving time even if the agency had the option of paying. That choice did not constitute discrimination because the Colorado agency provided identical Medicaid benefits to every similarly situated recipient, disabled or not.

---

*Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1239 (10th Cir. 2014). But because the plaintiffs have not urged plain error, we decline to consider the issue. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

**2. The per-mile reimbursement was not discriminatory even if the reimbursement was inadequate to fully compensate Ms. Taylor for her transportation costs.**

The plaintiffs also argue that the per-mile reimbursement was discriminatory because it did not sufficiently compensate Ms. Taylor for the attendants' driving time. Considered this way, the reimbursement is akin to a benefit "cap." But a benefit cap is not discriminatory simply because it fails to fully compensate certain disabled individuals. *See, e.g.*, *Patton v. TIC United Corp.*, 77 F.3d 1235, 1246 (10th Cir. 1996) (explaining that though a damages cap for personal injury actions may "fall[] disproportionately on the disabled," the cap on damages is not discriminatory when the "limitation applies to all").[6]

Neither the Americans with Disabilities Act nor the Rehabilitation Act requires Medicaid programs to compensate the disabled for all of their transportation costs. Though the per-mile reimbursement was inadequate for Ms. Taylor, that inadequacy does not make the reimbursement discriminatory.

---

[6] The plaintiffs point out that a federal regulation requires state Medicaid plans to specify that they "will ensure necessary transportation for beneficiaries to and from providers." 42 C.F.R. § 431.53(a). But the plaintiffs do not base their claim on the regulation or contend that the regulation creates a private right of action. *Cf. Harris v. James*, 127 F.3d 993, 1009-10 (11th Cir. 1997) (holding that 42 C.F.R. § 431.53(a) does not confer an enforceable right of transportation to and from medical providers).

### 3. The medical transportation program did not discriminate against disabled individuals who require a driver for transportation.

The plaintiffs also argue that the Colorado agency discriminated against Ms. Taylor by failing to provide for a compensated driver, while a compensated driver was provided to similarly situated Medicaid recipients. Appellants' Opening Br. at 30. But the plaintiffs erroneously define the universe of similarly situated recipients.

The relevant geographic unit is the county because the Colorado agency administers transportation assistance differently among counties. In some counties, the agency provides brokered transportation for Medicaid recipients. For example, Medicaid recipients in some counties can go to medical appointments in a county-subsidized van. In Ms. Taylor's county, however, transportation assistance is provided in two ways: (1) a wheelchair-accessible van for Medicaid recipients over 60 years old and (2) a per-mile reimbursement for all other Medicaid recipients. No one in Ms. Taylor's county can obtain compensation for a driver under the medical transportation program.

To determine whether Ms. Taylor suffered discrimination because of her disability, we compare Ms. Taylor to other Medicaid recipients who reside in her county, not recipients living elsewhere in Colorado. *See Boatman v. Hammons*, 164 F.3d 286, 292 (6th Cir. 1998) (holding that differences in county expenditures for transportation services, based on

factors such as geographic conditions, do not violate the regulatory requirement of uniform operation of the Medicaid program within the state); *see also Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 911 (7th Cir. 2003) (stating that a Medicaid program need not "assure identical convenience of service everywhere in the state").

With this comparison, the plaintiffs' discrimination claim fails because Ms. Taylor is treated the same as every other Medicaid recipient in her county.[7]

### 4. The Colorado agency was not obligated to modify its Medicaid programs to accommodate Ms. Taylor's disability.

Under the regulations implementing the Americans with Disabilities Act, Colorado must make reasonable accommodations for Ms. Taylor's disability only if necessary to avoid discrimination based on a disability. 28 C.F.R. § 35.130(b)(7). Invoking this regulation, the plaintiffs argue that

---

[7] The claim would fail even if the relevant comparison involved Medicaid recipients anywhere in the State of Colorado. In some of the more populated counties, Medicaid recipients are entitled to use brokered transportation services. These services are not provided in Ms. Taylor's county. As the plaintiffs point out, this renders the mix of services different for Ms. Taylor and some other Medicaid recipients in Colorado. But that difference is based on where Ms. Taylor lives, not the existence of a disability. The Americans with Disabilities Act and Rehabilitation Act prohibit discrimination based on the existence of a disability, not the place of residence. As a result, the plaintiffs' claims would fail even if we compared the benefits of Ms. Taylor and Medicaid recipients anywhere in Colorado.

the Colorado agency had to modify the medical transportation program. We disagree.

Colorado must modify its Medicaid programs only if Ms. Taylor could not otherwise obtain the same benefits made available to nondisabled individuals. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc) ("[T]he plain language of [28 C.F.R. § 35.130(b)(7)] . . . makes clear that an accommodation only is required when *necessary* to avoid discrimination *on the basis of* a disability." (emphasis in original)). Under this standard, Ms. Taylor cannot prevail because the requested accommodation (payment of her attendants to drive to medical appointments) was not available to anyone, disabled or not. Thus, Colorado was not obligated to alter its Medicaid programs by creating a new benefit previously unavailable to any Medicaid recipients.

\* \* \*

Having rejected the plaintiffs' four arguments, we uphold the dismissal of the discrimination claims. Even if the allegations in the complaint are credited, the Colorado agency did not discriminate against Ms. Taylor based on a disability. The Colorado agency provided the same benefits to all similarly situated Medicaid recipients, disabled or not.

11

### III. In denying the motion to reconsider, the district court acted within its discretion.

After the district court ordered dismissal, the plaintiffs moved for reconsideration, arguing that the court had mistakenly thought that the state agency could not pay the attendants under the medical transportation program. With the motion, the plaintiffs submitted a fee schedule for services under the medical transportation program. The district court denied the motion for reconsideration.

We review this ruling for an abuse of discretion. *See Elephant Butte Irrigation Dist. of N.M. v. U.S. Dep't of the Interior*, 538 F.3d 1299, 1301 (10th Cir. 2008). Under this standard, the plaintiffs' challenge fails.

In denying the motion for reconsideration, the district court concluded that the fee schedule would not have affected the need for dismissal. This conclusion fell within the district court's discretion. As the district court concluded, the Colorado agency has unambiguously interpreted its regulations to prohibit payment of attendants for driving Ms. Taylor to and from her medical appointments.

If the Colorado agency is incorrectly interpreting state regulations, the agency might be in violation of these regulations. But that violation would not involve the Americans with Disabilities Act or the Rehabilitation Act, the two statutes underlying Ms. Taylor's claims.

12

## IV.    Conclusion

The plaintiffs' arguments are invalid.[8] As a result, we affirm the dismissal and the denial of the motion for reconsideration.

---

[8]    The plaintiffs also argue that

- the district court failed to credit their allegations that the attendants would not continue to drive Ms. Taylor to medical appointments without fair compensation and

- the agency once issued a check for drivers, but now says there is a policy against payment of drivers.

We need not address these arguments. For the sake of argument, we can assume the attendants would refuse to drive Ms. Taylor without fair compensation. And the agency's current position on compensation of drivers is clear even if the agency had a different position in the past. The plaintiffs' claim involves discrimination, not misapplication of state regulations.