**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TAYLOR CHRISTIAN PROFITA,

     Plaintiff - Appellant,

v.

THE REGENTS OF THE UNIVERSITY
OF COLORADO; THE UNIVERSITY OF
COLORADO HEALTH SCIENCES
CENTER, a/k/a University of Colorado
Denver/Anschutz Medical Campus; JOHN
J. REILLY, JR., M.D., in his official
capacity as Dean of the University of
Colorado Health Sciences Center,

     Defendants - Appellees.

No. 17-1127
(D.C. No. 1:16-CV-03032-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

After twice failing clinical rotations at the University of Colorado Health

Sciences Center (the Medical School), Taylor Christian Profita was dismissed from

the University's M.D. program in January 2013. He attributes his failures to his

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

disabling physical and mental conditions. He later obtained treatment for these conditions, then sought to be readmitted to the M.D. program with full credit for the work he had performed before the rotations. The defendants denied him readmission, telling him he must reapply as a new student.

Mr. Profita brought this suit against the defendants under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, seeking readmission to the M.D. program as a reasonable accommodation for his disability.[1] The district court dismissed the action with prejudice, relying on cases from this circuit holding, in the employment context, that a request for "retroactive leniency for . . . past misconduct . . . is not a request for a reasonable accommodation as a matter of law." Aplt. App. at 44 (internal quotation marks omitted). In this appeal Mr. Profita argues that the district court's rationale was flawed because he was not dismissed for misconduct; he is a student, not an employee; and the accommodation he sought was prospective, not retrospective. But because the district court properly determined that his proposed accommodation—readmission to the medical school program with full credit for work previously performed, after his dismissal on academic grounds— was not a reasonable accommodation required by the ADA, we affirm the order of dismissal.

---

[1] This case is governed by the ADA Amendments Act of 2008, commonly known as the ADAAA. *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303 & n.1 (10th Cir. 2017). We refer to Mr. Profita's claim, as the parties do, as an ADA claim, except where he specifically invokes the ADAAA's amendments.

I.

In his complaint Mr. Profita alleges that he is an "otherwise qualified individual with a disability protected by the ADA." Aplt. App. at 6 (internal quotation marks omitted). He identifies his disabling conditions as "Major Depressive Disorder, moderate to severe" and "Unspecified Anxiety Disorder, mild to severe," along with "complications of chronic insomnia/sleep apnea and hypothyroidism." *Id.* at 7. Despite these conditions, he was able to commence his studies at the Medical School in 2008 and he successfully completed his first three years there, including the "first five of seven third year block clinical rotations." *Id.* at 8. But in 2011 and 2012 he failed the last two third-year clinical rotations, Hospitalized Adult Care and Women's Care. He attributes these failures to "outside pressures, worsening depression, anxiety, and sleep disturbance." *Id.*

As a result of failing these last two clinical rotations, Mr. Profita was placed on academic probation and put on a leave of absence for the 2012 spring semester. The Medical School's Student Promotions Committee notified him that to regain good academic status he would need to successfully remediate the two clinical rotations. The Committee also required him to obtain an evaluation from the Colorado Physicians Health Program.

The psychiatrist who conducted that evaluation indicated that Mr. Profita's symptoms "would suggest a mood syndrome . . . disabling anxiety disorder . . . psychotic disorder." *Id.* at 9 (internal quotation marks omitted; ellipses in original). Mr. Profita denied these symptoms. He asserts that the psychiatrist "made a critically

3

inaccurate diagnosis of maladaptive personality traits, not recognizing [his Major Depressive Disorder] and anxiety disorders." *Id.* (internal quotation marks omitted).[2]

Mr. Profita was later permitted to retake the Women's Care rotation, which he again failed. He claims that by the time of the repeated Women's Care rotation his depressive symptoms had worsened. Because of his lack of success in the Women's Care rotation, he was not provided an opportunity to remediate the other rotation, Hospitalized Adult Care.

Acting on the Promotions Committee's recommendation, the Dean of the Medical School sent Mr. Profita a letter dismissing him from the M.D. program for unsatisfactory academic performance. Mr. Profita then obtained medical care for his psychological conditions, and nearly nine months after his dismissal he delivered a letter to the defendants asserting that "his medical/psychological issues were now under control, well managed, and treated through therapy and correct medication." *Id.* at 12. The letter requested the defendants to reasonably accommodate his disability by

> readmitting me to the M.D. program at the point where these issues first began to have significant impact upon my performance [and] being granted credit for those courses and clerkships that I have completed successfully, with reinsertion into the program at the point of entering the Internal Medicine and Women's Care clinical clerkships.

---

[2]     The complaint also asserts that the psychiatrist's inaccurate diagnosis "misled the University Promotions Committee and allowed that University Committee to avoid the issue of accommodating Mr. Profita's illness." Aplt. App. at 10 (internal quotation marks omitted). But he does not explain why the alleged misdiagnosis would excuse his failure to make a timely request for accommodation or otherwise be relevant to his claim.

*Id.* at 11 (ellipsis and internal quotation marks omitted).

The defendants responded that "the School of Medicine does not have a retroactive obligation under the [ADA] to readmit you to the School of Medicine as an accommodation." *Id.* at 13 (internal quotation marks omitted). They informed Mr. Profita that to obtain readmission their policy required him to reapply as a new student. Rather than reapply, Mr. Profita filed this action.

## II.

### A.

This court reviews de novo a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017). "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted). "We then determine whether the plaintiff has provided enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). But to the extent the complaint relies on legal conclusions, we review those conclusions de novo, affording them no presumption of correctness. *See id.*

### B.

Title II of the ADA prohibits public entities from excluding qualified individuals with disabilities from participation in, or from enjoying the benefits of, an entity's services, programs, or activities, or from subjecting such individuals to

5

discrimination. 42 U.S.C. § 12132. To assert a viable Title II claim, a plaintiff must allege:

> (1) that he or she is a qualified individual with a disability;
>
> (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
>
> (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). A "qualified individual with a disability" is one "who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements" for participation in a program or activity. 42 U.S.C. § 12131(2).

Mr. Profita asserts that the defendants discriminated against him by failing to reasonably accommodate his disability. "A public entity must provide a reasonable accommodation under the ADA when it knows that the individual is disabled and requires an accommodation of some kind to participate in or receive the benefits of its services." *J.V.*, 813 F.3d at 1299 (internal quotation marks omitted).[3] A reasonable accommodation is one designed "to avoid discrimination based on a disability" by permitting a qualified individual with a disability to "obtain the same benefits made available to nondisabled individuals." *Taylor v. Colo. Dep't of Health*

---

[3] The language of Title II is "reasonable modifications," *see* 42 U.S.C. § 12131(2); *see also* 28 C.F.R. § 35.130(b)(7)(i) (agency regulation implementing Title II), which we have stated is essentially equivalent to Title I's term "reasonable accommodation." *See Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 & n.8 (10th Cir. 2007). "In Title II cases, this Court has used the terms interchangeably. . . ." *Id.* at 1195 n.8.

*Care Policy & Fin.*, 811 F.3d 1230, 1236 (10th Cir. 2016). The accommodation must provide *meaningful* access to the program or service. *See Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003), *overruled on other grounds as recognized by Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159, 1167 n.4 (10th Cir. 2012). "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact." *Punt v. Kelly Servs*., 862 F.3d 1040, 1050-51 (10th Cir. 2017) (internal quotation marks omitted).

III.

Mr. Profita seeks the opportunity to "complet[e] . . . the last year of medical school given his now well managed disability." Aplt. Opening Br. at 8. He asserts that reinstatement at the point he left off is necessary for him to receive meaningful access to the M.D. program. But to provide this requested accommodation, the defendants would be required to ignore, override, or reverse his previous dismissal for unsatisfactory academic performance.

Under Title I of the ADA, which guides our determination of what constitutes a reasonable accommodation for purposes of Mr. Profita's Title II claim, an employer is not required to reasonably accommodate an employee's disability by overlooking his previous misconduct, even if that misconduct resulted from his disability. *See, e.g.*, *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017). In *Dewitt* a diabetic customer-service representative who had been placed on a last-chance agreement because of a prior disciplinary incident suffered a severe drop in blood sugar while at work. *See id.* at 1305. During this incident she "experienced lethargy,

7

disorientation, and confusion," and she committed further workplace misconduct by dropping two calls from customers. *Id.* Her employer terminated her employment for hanging up on the customers. *See id.* at 1306. She later alleged that her termination violated the ADA because the employer had failed to reasonably accommodate her disability by excusing the disconnected calls, which she claimed were caused by her disability. *See id.* at 1315. We rejected that argument:

> Ms. DeWitt's accommodation claim fails because she did not request a reasonable accommodation to address concerns regarding the possibility of dropped calls; instead, she requested retroactive leniency for her misconduct. Specifically, Ms. DeWitt requested that [her employer] overlook that she hung up on at least two customers while on a Last Chance Agreement. Such retroactive leniency is not a "reasonable accommodation" as defined by the ADAAA. . . .

> The ADAAA does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct—irrespective of whether the misconduct resulted from the employee's disability. The Equal Employment Opportunity Commission [EEOC]'s . . . Enforcement Guidance makes clear that the requirement to provide reasonable accommodations under the ADAAA is always prospective, and that an employer is not required to excuse past misconduct even if it is the result of the individual's disability.

*Id.* at 1316 (internal quotation marks omitted).

The question here is whether the rule applied in *Dewitt*—which excludes retroactive leniency from the "reasonable accommodation" that employers must provide—applies to Mr. Profita, a student who was dismissed from a university program for unsatisfactory academic performance. Mr. Profita offers several reasons to distinguish *Dewitt*. First, he argues that *Dewitt*'s rule is limited to workplace misconduct. Second, he contends that the rule applies only when future adequate performance by the plaintiff could not be assured. Third, he claims that he seeks

8

prospective, not retrospective, relief because the defendants' refusal to reinstate him continues to deny him meaningful access to the M.D. program. Finally, he asserts that decisions in other courts and the remedial purposes of the ADA and its 2008 amendments support his claim that reinstatement of a dismissed medical student may be required as a reasonable accommodation. Rejecting these arguments, we conclude that the district court properly applied the rule in *Dewitt* in dismissing this action.

## IV.

### A.

Mr. Profita faults the district court for expanding what he characterizes as a narrow rule designed to avoid excusing employee misconduct into a "broad performance-based 'no second chance' rule" applicable to all reasonable-accommodation claims. Aplt. Opening Br. at 9. He attacks the expansion of this rule on two grounds: that it should be limited to affirmative misconduct, not including poor performance; and that it should apply only in the employment context.

Mr. Profita provides no good reason for limiting the rule to affirmative misconduct. In *Dewitt* we held that an employer is not required to accommodate *either* past misconduct *or* past poor performance. In response to the argument that the plaintiff had not violated a conduct rule but merely a performance standard, we said that "[a]ccording to the EEOC, . . . the basic rule that an employer is not required to excuse past poor performance . . . holds with respect to [violations of] performance standards." *Dewitt*, 845 F.3d at 1317 (brackets and internal quotation marks omitted). This only makes sense. The purpose of the

9

reasonable-accommodation requirement is not to exempt disabled employees from the consequences of past poor performance at work, but to enable them through reasonable accommodation to perform the essential functions of their job. *See id.* ("Performance standards relate to the quantitative and qualitative requirements for performance of essential functions of a particular job. . . . [T]he ADAAA permits an employer to apply the same performance standards to an employee with a disability that it applies to employees without disabilities." (brackets and internal quotation marks omitted)).

Mr. Profita also provides no good reason why the rule should be applied only to *employee* claims. Although he argues that the "doctrine emerges primarily in employment contexts," Aplt. Opening Br. at 11, he concedes that in at least one case it was applied to a dismissed medical student's unprofessional behavior. In *Halpern v. Wake Forest University Health Sciences*, 669 F.3d 454 (4th Cir. 2012), the Fourth Circuit characterized a medical student's proposed accommodation—"which included ongoing psychiatric treatment, participation in a program for distressed physicians, and continuing in the Medical School on strict probation"—as unreasonable because, among other things,

> [b]y the time [the student] requested that the Medical School implement his special remediation plan, he had already engaged in numerous unprofessional acts that warranted his dismissal, including acting abusively towards staff, multiple unexcused absences, repeated failure to meet deadlines, and tardiness. Thus, [he] sought not a disability accommodation, but a second chance to better control his treatable medical condition.

*Id.* at 465 (brackets and internal quotation marks omitted).

10

*Halpern* is persuasive. Mr. Profita attempts to distinguish it on the basis that "[u]nprofessional behavior obviously falls within the misconduct milieu." Aplt. Opening Br. at 11. But we have already explained that we do not distinguish between affirmative misconduct and deficient performance (including deficient academic performance) when either is a sufficient ground for termination.

Mr. Profita also argues that in the education context the "no second chance" rule is overbroad and inconsistent with the ADA's purposes because, for example, a student "may not know if ADA accommodation is needed prior to examination" yet the rule would not require an opportunity to retake the exam even if the student's disability caused the failing grade. *Id.* at 12-13. But *Dewitt* addressed this concern as well. The EEOC argued that "sometimes, an employee may not know or be willing to acknowledge that there is a problem requiring accommodation until the employer points out deficiencies in performance." *Dewitt*, 845 F.3d at 1317 (brackets and internal quotation marks omitted). We responded that "an employer is not obliged to apply the brakes on an ongoing disciplinary process based on past performance deficiencies simply because an employee requests an accommodation." *Id.* at 1317-18. Similarly, Mr. Profita's accommodation request, which came months after he had twice failed rotations and had been dismissed from the M.D. program, did not obligate the defendants to reinstate him "simply because [he] purported to request, at the eleventh hour, an accommodation." *Id.* at 1318.

11

## B.

Mr. Profita next argues that the rule should be applied only in cases where the plaintiff's future performance could not be assured. He relies on language in an unpublished district-court housing-discrimination decision, which said that a mentally ill tenant could be entitled to a "second chance" after committing a crime that disqualified her from a federal housing subsidy. *Super v. J.D'Amelia & Assocs., LLC*, No. 3:09CV831 (SRU), 2010 WL 3926887, at *6-8 (D. Conn. Sept. 30, 2010). But the district court's reasoning in *Super* is not binding on us and we do not find it persuasive, particularly given the analysis in *Dewitt*. Also, Mr. Profita's argument that decisions in second-chance accommodation cases "do not turn on [the] timing of the requested accommodation" but on the "effectiveness of the accommodation," Aplt. Reply Br. at 1, is contrary to *Dewitt*, which stated that the employer was "not . . . obligated to stay its disciplinary hand," 845 F.3d at 1318, merely because the employee requested a last-minute accommodation.

## C.

Mr. Profita also argues that the rule against retroactive leniency should not apply to him because he in fact seeks a prospective accommodation: the opportunity to complete his medical degree now that he has obtained treatment for his disabling conditions. He contends that so long as "the offending policy forbidding reinstatement back into his last year of medical school remains firmly in place" he is denied "meaningful public entity access *currently and prospectively* [as] a person with a disability." Aplt. Opening Br. at 19 (emphasis added) (footnote omitted).

12

He relies primarily on *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299 (1st Cir. 2003). In that ADA Title III case the disabled plaintiff sued a retailer whose cashier refused to sell him alcoholic beverages when he displayed symptoms mimicking intoxication, even after he explained to the store's manager that his symptoms were due to his disabling condition. *See id.* at 301-02. The manager told him that the store had a policy that he could not revisit the cashier's decision to refuse to sell alcoholic beverages to a customer. *See id.* at 302. The district court determined that the store's actions violated the ADA, and it enjoined the retailer from enforcing what it referred to as its "refusal to reconsider" policy at the store. *Id.* at 303. The First Circuit upheld this injunctive relief. *See id.* at 310-11.

The type of prospective relief *Dudley* authorized is easily distinguished from the relief Mr. Profita seeks here. In *Dudley* the plaintiff did not leave the store, then return nine months later insisting that he had been disabled during the earlier transaction and asking that the earlier transaction now be completed at the original price and on the original terms. Rather, the plaintiff was still in the store, attempting to purchase alcohol, when he disclosed to the manager that his disability had caused his inebriation-like symptoms; and the retailer unreasonably refused to consider his disability-based explanation. And the court approved only prospective injunctive relief applicable to *future transactions* at the store.

Nor has Mr. Profita convinced us of his broader point, that he seeks only a prospective accommodation. To permit this characterization of "prospective accommodation" would eviscerate *Dewitt*'s "no retroactive leniency" rule. For

13

example, a terminated employee who had never requested accommodation during his employment but who later obtained medical treatment that made him capable of performing his former job could always claim to be requesting only *prospective* relief when seeking to be rehired and even given seniority-based benefits he had earned at the time he was fired. That is not the purpose of a reasonable accommodation under the ADA. The disability statutes do not require that a disabled person properly terminated from a job or program be given a greater opportunity for reinstatement than that given to a terminated person who is not disabled. In this case all terminated medical students must apply for readmission; Mr. Profita was not treated differently.

D.

Mr. Profita also argues that cases from other courts support his claim. But we do not find those cases persuasive because none addressed the issue before us. Either the accommodation was requested before termination or the defendant had agreed to consider reinstatement.

E.

Finally, Mr. Profita argues that both the ADA and the ADAAA were enacted with a remedial purpose, to eliminate discrimination against people with disabilities. He contends that a "no leniency" rule violates the congressional mandate reflected in these statutes. But such broad policy arguments cannot override statutory language or our precedents.

V.

We affirm the district court's order dismissing Mr. Profita's complaint for failure to state a claim.

Entered for the Court


Harris L Hartz
Circuit Judge