Filed 03/31/26

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-03653

| The Vermont Country Store, Inc. v. Laurey Packard |
| --- |

## RULING ON DEFENDANT'S MOTION TO RECONSIDER AND FOR REASONABLE ACCOMMODATIONS

By motion filed January 16, 2026, Defendant Laurey Packard, appearing *pro se*, asserts that she suffers from certain cognitive disabilities, such that the Court—as a reasonable accommodation under the Americans with Disabilities Act ("ADA")—must relax or otherwise change its application of ordinary court rules and practices as to Defendant in several respects. In particular, Defendant requests, as accommodations:

- the right to present statements of fact, for purposes of Rule 56 of the Vermont Rules of Civil Procedure, in a "narrative" or "oral" manner, rather than through Rule 56(c) procedures, which require that all such statements are in writing and are set forth together in a separate, standalone filing, and that each particular factual statement be concise, enumerated, and supported by specific citations to admissible evidence;

- affirmative assistance or guidance from the Court to Defendant with respect to the preparation of her legal filings, to ensure the filings comply with the Civil Rules; and

- a general or blanket grant of some additional time to Defendant, sufficient to allow her to complete ordinary litigation tasks, such as making legal filings within the time periods set by rule.

In addition, Defendant also seeks—as a reasonable accommodation—reconsideration of this Court's orders of January 16, 2026, which denied two of Defendant's motions for summary judgment for failure to comply with Rule 56(c) of the Vermont Rules of Civil Procedure, granted Plaintiff's Rule 12(f) motion to strike (as redundant and harassing) another motion for summary judgment filed by Defendant, and granted other relief. Defendant reasons that because she suffered from qualifying disabilities but had not been afforded the above-referenced accommodations to assist her when engaging in prior motion practice, the Court's orders regarding such motions are tainted, such that they must be set aside to prevent manifest injustice.[1]

---

[1] Defendant's motion states that it is based on Rules 59(e) and 60(b) of the Vermont Rules of Civil Procedure. Defendant's reply brief, filed January 28, 2026, indicates that the motion is governed by Rule 54(b). Since there is no judgment entered yet in this case, Defendant is not seeking relief from any judgment, but merely relief from an interlocutory decision or order, and thus, her reply brief is correct in stating that the motion is governed by Rule 54(b).

1

In sum, in a single motion based on Defendant's assertion that she is a qualified individual with a disability, she seeks two, distinct types or forms of relief: (1) specified accommodations to be afforded to her prospectively, during the pendency of this case; and (2) reconsideration of prior, interlocutory court orders, as a reasonable accommodation for her claimed disability. For reasons discussed below, the Court will DENY Defendant's motion in both respects.

## I. The Americans with Disabilities Act

The ADA became federal law in 1990, was substantially amended in 2008, and is codified at 42 U.S.C. § 12101 *et seq.* The law's general purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *see* 42 U.S.C. § 12101 note (Findings and Purposes of ADA Amendments Act of 2008) (reiterating purpose). Title II of the ADA prohibits public entities, including state courts, from engaging in discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"); *Tennessee v. Lane*, 541 U.S. 509, 533 (2004) (Title II creates an "affirmative obligation" on state courts "to accommodate persons with disabilities in the administration of justice"). A "disability" is defined in the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). A "qualified individual with a disability" is one "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

However, although a person may be a qualified individual with a disability, "Title II does not require States to employ any and all means to make judicial services accessible to [such person], and it does not require States to compromise their essential eligibility criteria for public programs." *Lane*, 541 U.S. at 531-32. The operative question is whether the qualified individual with a disability has been denied "'meaningful access'" to a public entity's benefit or service. *Bedford v. Michigan*, 722 F. App'x 515, 518 (6th Cir. 2018) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985);[2] *see also* 28 C.F.R. § 35.130(b)(1)-(4) (describing discriminatory acts by public entities as those that would deny qualified individuals with a disability the "equal" or "as effective" opportunities to participate in or benefit from the public entity's aid, benefit, or service).

If such meaningful access or opportunity has been denied to a qualified individual, then "[r]easonable accommodation may be necessary" to afford such access, and "a refusal to modify a program or policy may, in view of the circumstances, become unreasonable and discriminatory." *Bedford*, 722 F. App'x at 518. As explained by federal regulations that implement the ADA: public entities "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity

---

[2] *Alexander* was a case arising under Section 504 of the federal Rehabilitation Act, but as the Sixth Circuit notes, "jurisprudence interpreting" either Section 504 or Title II of the ADA "is appliable to both" statutes, and both statutes "should be interpreted and applied consistently." *Bedford*, 722 F. App'x at 518.

can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

Notably, however, "[a] reasonable accommodation is a prospective remedy," and "[i]ts unrequested availability cannot excuse past misconduct." *Bhatt v. Univ. of Vt.*, 2008 VT 76, ¶ 27, 184 Vt. 195; *see Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) ("the [State] College was not obligated to provide accommodation [to the plaintiff-student] until plaintiff had provided a proper diagnosis of ADHD and requested specific accommodation"); *Profita v. Regents of the Univ. of Colo.*, 709 F. App'x 917, 920-21 (10th Cir. 2017) ("Under Title I of the ADA, which guides our determination of what constitutes a reasonable accommodation for purposes of Mr. Profita's Title II claim, an employer is not required to reasonably accommodate an employee's disability by overlooking his previous misconduct, even if that misconduct resulted from his disability.") (citing *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017)); *Katz v. UPMC*, No. 2:16cv1627, 2019 WL 3843041, at *8 (W.D. Pa. Aug. 15, 2019) (same; citing *Dewitt* and several other federal appellate court decisions).

II. <u>Defendant's Request For Reconsideration</u>

Pursuant to Rule 54(b) of the Vermont Rules of Civil Procedure, the Court has discretion to revise its interlocutory decisions before the entry of final judgment. The discretion afforded by this Rule may be exercised "as justice requires, that is, in accordance with the principles of equity and fair play." *Putney Sch., Inc. v. Schaaf*, 157 Vt. 396, 407 (1991). That standard is not a particularly liberal one, however. *See* 18B E. Cooper, *Fed. Prac. & Proc. Juris.* § 4478.1 (3d ed., April 2023 update) ("Reconsideration . . . is not provided indiscriminately whenever some party might wish it."). As the Second Circuit has observed when construing the analogous federal standard, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLC*, 322 F.3d 147, 167 (2d Cir. 2003) (quotation omitted). Thus, an interlocutory decision "may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (quotation omitted).

Here, Defendant's motion for reconsideration must be denied because, as discussed above, the ADA does not impose its obligations on public entities in a manner requiring the entities to excuse an individual's *past conduct*—*e.g.*, Defendant's non-compliance with rules or court—which is what Defendant clearly seeks by her motion for reconsideration under V.R.C.P. 54(b). By making a request for an accommodation for the first time in this case in a motion seeking reconsideration of a prior interlocutory decision, Defendant is seeking an accommodation that would operate retroactively, to excuse her *prior* failures to follow basic rules of court procedure, such as Rule 56(c)(1) and Rule 12(f). Simply put, the ADA—the substantive law and the source of rights relied upon by Defendant here—does not support the retroactive relief that Defendant seeks.

The relief sought is also problematic as a matter of fairness and equity. Defendant has not suggested or shown that she was previously unaware of her disabilities, such that she could not have sought reasonable accommodations for her known disabilities in a timely manner (at least prior to this Court's rulings of January 16, 2026). Nor has Defendant argued that her disability prevented her from timely apprising the Court of her disabilities, or that she was unable to request specific accommodations because of her disabilities. Moreover, the relief sought by Defendant would waste

Plaintiff's litigation efforts and expenses, which were spent towards securing the relief that the Court granted on January 16, 2026. Further, the Court would have wasted its own resources, which were spent adjudicating multiple motions (without having received any timely request from Defendant for any accommodation under the ADA). As noted above, once parties have fought for a court's ruling, they ordinarily should not have to fight for that same ruling all over again. But that's what Defendant's retroactive accommodation request would do to this case, and her neglect in seeking the accommodation is without reasonable excuse.

Accordingly, there is no manifest injustice from the Court's orders of January 16, 2026, such that they should be set aside or modified under Rule 54(b).

### III. Prospective Accommodations

Defendant also seeks prospective relief—ADA accommodations that would be afforded for the remainder of this litigation. The Court will deny this request for lack of sufficient proof.

An individual seeking an accommodation for a disability must do more than tell a public entity that the individual believes that they have a recognized disability that qualifies under the ADA. The individual must also do more than indicate that they will be seeking medical evaluations for a possible disability. *See Kaltenberger*, 162 F.3d at 437 & 437 n.6; *State v. Pudvah*, No. 2004-514, 2005 WL 6151337, at *1 (Vt. Nov. 2005) (unpub. mem.) ("Apart from his statements to the officer during the investigative stop claiming to be disabled, however, defendant here has not offered any evidence to show that he fits within the ADA definition of a 'qualified individual with a disability.'"). Here, Defendant has provided nothing beyond her own, unsworn filings in this case to show that she has been diagnosed with qualifying cognitive disabilities. Defendant's motion had indicated that she would seek independent evidentiary support, in the form of a sworn statement from her doctor, describing the nature of her diagnosed disabilities and how they impact her cognitive functioning. She advised this Court of a doctor's appointment that she had scheduled, to take place on February 19, 2026. However, many weeks have passed since, and no such proof has been filed.

In any event, even assuming that Defendant has received a medical doctor's diagnosis indicating that Defendant suffers from certain cognitive abilities, the record in this case strongly rebuts any notion or presumption that those disabilities adversely impact Defendant's ability as a litigant to comprehend and fully comply with the rules of this Court. In other words, assuming Defendant has cognitive disabilities, they do not prevent Defendant from having meaningful access to, or a fair opportunity to participate in, civil litigation in this Court.

Take Rule 56(c)(1) as an example, which requires that the party seeking a summary judgment do so by submitting a separate statement of material facts, formatted with numbered paragraphs or sentences, and supported by citations to admissible evidence. Defendant has repeatedly failed to follow that Rule's mandates and Defendant now requests an accommodation that would allow her to essentially ignore those mandates. Defendant's litigation conduct in this case shows that she has the ability to comply with Rule 56(c)(1), and in a timely fashion.[3] Defendant's instant motion itself

---

[3] It is indisputable that Defendant can comprehend written English. She can write cogently, competently, and analytically, as well. The Court also finds from Defendant's litigation conduct in this case that she has a rational and factual understanding of the claims brought against her; she comprehends the legal and factual bases for those claims; and she is aware of possible defenses or grounds for avoidance of liability. Defendant may lack a certain

4

reveals that she has the competence and abilities to present organized, enumerated, and concise statements and sentences in writing. Her motion and reply brief include statements or sentences that are set forth in sequentially numbered paragraphs. She regularly employs Roman numerals and Arabic numerals (0,1,2,3,4, … etc.), without any problem. Her motion also shows that she has the ability to include specific citations, when and where appropriate, to support statements of law or requests for relief. That very skill can be employed for purposes of Rule 56(c)(1), which requires the moving party to include "specific citations" to materials that support the moving party's statements of fact.

Lastly, timing has never been an issue—Defendant's motions, replies, and oppositions are often filed within a day or two after the first day on which the filings could be made. For example, the instant motion for reconsideration was filed on January 16, 2026, and that was the *same day* that the Court's issued its ruling for which reconsideration was sought. Defendant's quick turn-around on her various legal filings is nearly without precedent, in this Court's experience at least. Accordingly, the Court fails to see any facts to suggest that Defendant was, because of her disabilities, not permitted reasonable, meaningful access to the procedural mechanism available to all litigants under Rule 56 (that is, to seek a summary judgment on the papers). *Cf. Williamson v. Univ. of Louisville*, Civil Action No. 3:20-CV-00266-DJH-RSE, 2023 WL 2060741, at *5 (W.D. Ky. Feb. 16, 2023) (denying *pro se* plaintiff's request for appointment of disability advocate or legal counsel, as accommodation for disabilities that affect his ability to communicate through writing, since plaintiff "has managed to file numerous motions and communicate his arguments to the Court," and "has competently represented himself," such that "his status under the ADA has had no impact on his ability to pursue his claims").

Defendant also requests that she receive an accommodation in the form of affirmative assistance or guidance from the Court, with respect to the preparation of her legal filings, to ensure the filings comply with the Civil Rules. This request must be denied, given the lack of proof, as noted above. Further, this accommodation must be denied because it would "fundamentally alter the nature of the service, program, or activity" of this Court. 28 C.F.R. § 35.130(b)(7)(i). The ADA "does not require States to employ any and all means to make judicial services accessible to persons with disabilities." *Lane*, 541 U.S. at 531-32. The ADA "does not require that disabled persons be treated preferentially or necessarily be given the accommodations of their choice." *Bedford*, 722 F. App'x at 520; *see also Ombe v. Cook*, 861 F. App'x 182, 185 & 185 n.4 (10th Cir. 2021) (ADA does not require a trial court to have altered its "rules applicable to everyone for the benefit of" an individual with disabilities, or apply "a different set of rules to him than other litigants"); *Hamilton v. Robb*, Civil Action No. 3:18-CV-1915, 2020 WL 1228077, at *2 (M.D. Pa. Mar. 12, 2020) (ADA "has no application in the context of excusing a pro se litigant from following statutory provisions, regulatory provisions, the Federal Rules of Civil Procedure and court rules, including the Middle District of Pennsylvania Local Rules of Court, and court orders"); *Goldblatt v. Geiger*, 867 F. Supp. 2d 201, 210 (D.N.H. 2012) ("the ADA does not provide [a qualified individual with a disability] with the right to be represented by a non-attorney, especially if doing so would trump state law"). In other words, ADA accommodations are required if they are needed to afford or facilitate a disabled

---

degree of legal sophistication seen in some trained professional litigators, but that is a far cry from lacking fair and reasonable access to the court system.

individual's *access to or participation in* court proceedings, but the ADA does not require alteration of substantive rules governing litigation.[4]

Courts are not in the business of preparing legal filings for litigants or pre-checking the written work of any litigants, for compliance with court rules. To engage in that conduct would violate the Court's obligation to serve as a neutral arbiter of cases. As explained by the U.S. Supreme Court:

> District judges have no obligation to act as counsel or paralegal to *pro se* litigants. In *McKaskle v. Wiggins,* 465 U.S. 168, 183–184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Court stated that "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure" and that "the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." See also *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) ("[T]he trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out"). Explaining the details of federal habeas procedure and calculating statutes of limitations are tasks normally and properly performed by trained counsel as a matter of course. Requiring district courts to advise a *pro se* litigant in such a manner would undermine district judges' role as impartial decisionmakers.

*Pliler v. Ford,* 542 U.S. 225, 231 (2004). Vermont's Supreme Court takes the same position. *See Nevitt v. Nevitt,* 155 Vt. 391, 401 (1990) ("Although we will not permit unfair advantage to be taken of one who acts as her own attorney, it is not the trial court's responsibility to offer affirmative help to a pro se litigant.") (citing *Olde & Co. v. Boudreau,* 150 Vt. 321, 322 (1988)). The Vermont Code of Judicial Conduct also provides that judges "shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially." Vt. Code Jud. Conduct, Rule 2.2. Judges must be impartial, and avoid the appearance of bias, and they put those requirements and interests at risk when they provide affirmative legal assistance to a party as to how to comply with court rules or procedures. Accordingly, because the ADA "requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided," *Lane,* 541 U.S. at 532, and because Defendant's requested accommodation would alter and adversely impact the fundamental role and duties of the Court, Defendant's request will be denied.

Defendant's final requested accommodation—for an unspecified grant of extra time to complete litigation tasks generally—will be denied. First, there is a lack of proof, as noted above. Further, such an accommodation is unreasonable because it is not specific to any particular litigation task, and there is no request for a specific grant of extra time (*i.e.,* days, weeks, months, hours?). Such an accommodation would also take away the Court's discretion to grant extra time based on the circumstances presented. The Court will not simply cede control over its docket to any litigant in a blanket fashion, such as is sought by Defendant.

---

[4] By this same logic, the Court would have grounds for denying Defendant's request that Rule 56(c)(1)'s mandates not apply to her or not be enforced against her.

If Defendant is able to prove through competent, sufficient evidence that she has been diagnosed with disabilities under the ADA, and if Defendant is able to show that these disabilities require her to be given more time to complete certain litigation tasks, then Defendant may file motions for extensions of time that are specific as to the length of extension sought, and also specific to the task at hand (e.g., "Defendant seeks five additional days to complete its opposition to Plaintiff's motion."). However, a blanket request for more time is unreasonable and in conflict with the role of the Court to exercise discretion and manage its docket efficiently and fairly. The Court will also need to hear from Plaintiff on any requests for more time, and consider the need for efficient disposition of this case. The Court will also consider the fact that Defendant has never remotely exhibited any difficulty in meeting ordinary deadlines for litigation tasks.

IV. Conclusion

Wherefore, Defendant's motion for reconsideration and for accommodations, filed January 16, 2026, is hereby DENIED.


Electronically Signed on: Monday, March 30, 2026 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge